# EXHIBIT A

| STATE OF MICHIGAN<br>70th JUDICIAL DISTRICT COURT<br>111 S. Michigan Avenue<br>Saginaw, MI 48602 | NOTICE<br><br>JURY TRIAL | CASE NO.<br><br>13-1199-LT-5 |
|---|---|---|

Plaintiff                vs.                   Defendant

Federal Home Loan Mortgage Cor          Nitin Amersey<br>                                        Ocwen Loan Servicing, Llc

# TAKE NOTICE
## Bring this NOTICE with you.

The case of Federal Home Loan Mortgage Cor vs. Nitin Amersey

has been set for JURY TRIAL on September 24, 2013 at  9:00 AM.

before the Hon. M. Randall Jurrens, District Judge.

You must appear in courtroom 303 on the above date at the time scheduled.

All requests for adjournment must be in writing and directed to

the Hon. M. Randall Jurrens, District Judge.

Date: August 6, 2013                        Jury Clerk: Courtney Eggebrecht<br>                                              Phone number: 790-5387

FORM: CIS250P-JT

| STATE OF MICHIGAN<br>70th JUDICIAL DISTRICT COURT<br>111 S. Michigan Avenue<br>Saginaw, MI 48602 | NOTICE<br><br>SETTLEMENT | CASE NO.<br><br>13-1199-LT-5 |
| --- | --- | --- |

| Plaintiff | vs. | Defendant |
| --- | --- | --- |
| Federal Home Loan Mortgage Cor | | Nitin Amersey<br>Ocwen Loan Servicing, Llc |

# TAKE NOTICE
## Bring this NOTICE with you.

The case of Federal Home Loan Mortgage Cor vs. Nitin Amersey
has been set for SETTLEMENT on September 13, 2013 at 9:00 AM
before the Hon. M. Randall Jurrens, District Judge.
You must appear in courtroom 303 on the above date at the time scheduled.
No case that is set can be adjourned except by written stipulation or for
cause shown upon oath. All cases are called promptly at the time specified,
and on those not answered by either party, default or dismissal may be entered.

Date: August 7, 2013

Deputy Clerk: Gwen Rhodes
Phone number: 790-5366

FORM: CIS250P-NJ

**STATE OF MICHIGAN**
**70th DISTRICT JUDICIAL COURT**

Federal Home Loan
Mortgage Corporation,

        Plaintiff,

                                 Case No. 13-1199-LT(5)
                                 Hon. M. Randall Jurrens

                                 **DEFENDANT'S FIRST SET OF**
                                 **REQUESTS FOR ADMISSION**

v.
                                           *318199503*

Nitin M. Amersey,

        Defendant.

Nitin M. Amersey,

        Third-Party Plaintiff,
v.

Ocwen Loan Servicing, LLC,

        Third-Party Defendant
                                                      /

| | |
|---|---|
| Trott & Trott, P.C. | Jerome D. Goldberg, PLLC |
| Donald J. King (P55358) | Jerome D. Goldberg (P61678) |
| Attorney for Plaintiff | Attorneys for Defendant/Third-Party Plaintiff |
| 31440 Northwestern Hwy., Suite 200 | 2921 East Jefferson, Suite 205 |
| Farmington Hills, MI 48334 | Detroit, MI 48207 |
| (248) 723-6452 | (313) 393-6001 |
| | |
| Herz Schram | Kathy H. Murphy (P51422) |
| Deborah S. Lapin (P59027) | Attorney for Defendant/Third-Party Plaintiff |
| Attorney for Third-Party Defendant | P.O. Box 51164 |
| 1760 S. Telegraph Road, Suite300 | Livonia, MI 48150 |
| Bloomfield Hills, MI 48302 | (734) 578-1887 |
| (248)335-5000 | |

## DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION

NOW COMES DEFENDANT NITIN M. AMERSEY, by and through his attorneys

JEROME D. GOLDBERG, PLLC, and KATHY H. MURPHY, and submits the following First

1

Set of Requests for Admission to Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac").

## DEFINITIONS AND INSTRUCTIONS

1.    "Defendant" refers to Nitin M. Amersey.

2.    "Freddie Mac", "Plaintiff," "you" and "your" refer to Freddie Mac and its officers, directors, employees, agents and all other persons acting or purporting to act on its behalf.

3.    "Communication" means any transmission or exchange of information between two or more persons, orally or otherwise, including, without limitation, any correspondence, conversation, or discussion, whether face-to-face or by letter, telephone, telegraph, telex, telecopier, electronic mail, electronic text or any other medium.

4.    To "identify" or set forth the "identity" of a person means:

(i)    in the case of a natural person, to state the person's name and current (or last known, so indicating) address, telephone number, employer, and title or position;

(ii)    in the case of an entity other than a natural person, to state the entity's name, nature (corporation, partnership, limited liability company, trust, etc.) and current (or last known, so indicating) address, telephone number, and primary line of business or activity.

5.    "Documents" means "documents" as defined under MCR 2.310(2), including without limitation all original and draft pieces of paper bearing any writing, printing, typing or other marks of any kind, whether human or machine readable; all information kept by electronic, electromagnetic, photographic, or mechanical means; and all nonidentical copies of original documents.  **Please note that e-mail messages and other information stored on computers or**

2

inquiry. This includes (but is not limited to) information and documents in the possession of your attorneys, accountants, agents, or other persons directly or indirectly employed by you or connected with you or your attorneys.

11.     **The responses requested herein shall be returned to the offices of Jerome D. Goldberg, PLLC, 2921 E. Jefferson Avenue, Suite 205, Detroit, Michigan 48207.**

12.     Produce all documents in full and unexpurgated form, organized and labeled to correspond with the categories in the discovery request pursuant to MCR 2.3 10(C)(6).

13.     CLAIM OF PRIVILEGE OR OTHER PROTECTION: with respect to any document or information you withhold by claiming that it is privileged or subject to protection as trial preparation materials, or for any other reason, state the privilege or other ground for non-production and describe the nature and subject matter of the documents, communications, or things not produced or disclosed (including the type of document or communication, the date it was made, the author or maker, and all recipients) in a manner that will enable other parties to assess the applicability of the claimed privilege or protection. If a portion of any otherwise discoverable document contains information subject to a claim of privilege or protection, delete or redact those portions of the document subject to the claim of privilege or protection, affix an indication of the location and size of the portion deleted or redacted, and produce the document along with the information described in this paragraph.

14.     At such time as you become aware of information responsive to these discovery requests, which is not included in your initial response, you are requested pursuant to MCR 2.302(E) to reasonably make supplementary responses and willfully disclose all such information.

**REQUESTS FOR ADMISSION**

4

1.      Please admit that you were the owner of a beneficial interest in the Property at the time of the Sheriff's sale of the Property.
RESPONSE:


2.      Please admit that you were taken over and placed in conservatorship by the federal government under the control of the Federal Housing Finance Authority ("FHFA") in September of 2008 and that you are still under the FHFA's control.
RESPONSE:


3.      Please admit that you and Bank of America and/or Ocwen Loan Servicing, LLC, are parties to a contract with the federal government in which you and Bank of America and/or Ocwen Loan Servicing, LLC, as lenders agreed to perform loan modifications on all of your and Bank of America's and/or Ocwen Loan Servicing, LLC's loans, respectively, in accordance with the Home Affordable Modification Program, and pursuant to which you are being paid over seven billion dollars (the "Servicer Participation Contract").
RESPONSE:


4.      Please admit that pursuant to the Servicer Participation Contract, the duty to modify loans extends to mortgage loans that:  are secured by one-four unit property that are not vacant or condemned; are delinquent or in default; and meet a net present value test for the modification, and that the duty applies to loans that are currently in foreclosure.
RESPONSE:


5.      Please admit that you received a bail out from the federal government under the TARP program or another similar program.
RESPONSE:


6.      Please admit that, in return for receipt of bail-out funds from the federal government, you were expected to use such funds to assist homeowners.  If your answer is anything other than an unqualified admission, provide documentation thereof.
RESPONSE:


7.      Please admit that you foreclose on more borrowers facing foreclosure than you assist.  If your answer is anything other than an unqualified admission, provide documentation thereof.
RESPONSE:

8.      Please admit that you use bail-out funds from the federal government to foreclose on homeowners.  If your answer is anything other than an unqualified admission, provide documentation thereof.
RESPONSE:


9.      Please admit that borrowers in active litigation are eligible for the Home Affordable Modification Program.
RESPONSE:


10.     Please admit that Defendant met the criteria for the Home Affordable Modification Program before the instant action and that he still meets those criteria today.  If your answer is anything other than an unqualified admission, provide documentation thereof.
RESPONSE:


11.     Please admit that you, Bank of America and Ocwen Loan Servicing, LLC, have refused to modify the Loan.  If your answer is anything other than an unqualified admission, provide documentation thereof.
RESPONSE:


12.     Please admit that you, Bank of America and Ocwen Loan Servicing, LLC, have failed to engage in loss mitigation efforts including a reasonable modification pursuant to applicable law.  If your answer is anything other than an unqualified admission, provide documentation thereof.
RESPONSE:


KATHY H. MURPHY


Kathy H. Murphy (P51422)
Attorney for Defendant/Third-Party Plaintiff
P.O. Box 51164
Livonia, MI 48150
(734) 578-1887
Email: kathyhmurphy@gmail.com

DATED:  August 2, 2013


6

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on August 2, 2013, by first-class U.S. mail to Donald King, 31440 Northwestern Highway, Suite 200, Farmington Hills, Michigan 48334.

Kathy H. Murphy

**STATE OF MICHIGAN**
**70th DISTRICT JUDICIAL COURT**

Federal Home Loan
Mortgage Corporation,

      Plaintiff,

Case No. 13-1199-LT(5)
Hon. M. Randall Jurrens

**DEFENDANT'S FIRST SET OF
INTERROGATORIES AND
REQUESTS FOR PRODUCTION
OF DOCUMENTS**

v.

Nitin M. Amersey,

      Defendant.

Nitin M. Amersey,

      Third-Party Plaintiff,

v.

Ocwen Loan Servicing, LLC,

      Third-Party Defendant

| | |
|---|---|
| Trott & Trott, P.C.<br>Donald J. King (P55358)<br>Attorney for Plaintiff<br>31440 Northwestern Hwy., Suite 200<br>Farmington Hills, MI 48334<br>(248) 723-6452 | Jerome D. Goldberg, PLLC<br>Jerome D. Goldberg (P61678)<br>Attorneys for Defendant/Third-Party Plaintiff<br>2921 East Jefferson, Suite 205<br>Detroit, MI 48207<br>(313) 393-6001 |
| Deborah S. Lapin (P59027)<br>Herz Schram<br>Attorney for Third-Party Defendant<br>1760 S. Telegraph Road, Suite 300<br>Bloomfield Hills, MI 48302<br>(248) 335-5000 | Kathy H. Murphy (P51422)<br>Attorney for Defendant/Third-Party Plaintiff<br>P.O. Box 51164<br>Livonia, MI 48150<br>(734) 578-1887 |

## <u>DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

NOW COMES DEFENDANT NITIN M. AMERSEY, by and through his attorneys JEROME D. GOLDBERG, PLLC, and KATHY H. MURPHY, and submits the following First Set of Interrogatories and Requests for Production of Documents to Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac").

PLEASE TAKE NOTICE that the following discovery requests are directed to Plaintiff and its predecessors and assignees (hereinafter collectively referred to as "Plaintiff") under the provisions of MCR 2.309 and MCR 2.310.

You are required to answer these Interrogatories and Requests for Production of Documents and furnish such information as is available to you including all information within your knowledge or that you can obtain from employees, agents, representatives, sureties, attorneys or indemnitors.

These discovery requests shall be deemed continuing and supplemental answers shall be furnished whenever information is received by you which is in any way different from that submitted in answer to these interrogatories.

Each Interrogatory solicits all information available to Plaintiff, including that information obtainable by Plaintiff from Plaintiff's attorneys, investigators, agents, employers and representatives.

These Interrogatories are to be answered in detail. If you cannot answer the Interrogatories in full, answer to the extent possible and explain your inability to answer the remainder.

If any of the answers to these Interrogatories may be derived from papers, records, tape recordings or documents in your possession, or under your control, such as employment records, earning records, and the like, please attach a copy thereof to your answer, or in the alternative, please describe each of said documents with specificity and state where and when these documents will be available to Defendants' counsel for inspection and copying.

A.     When identification of any person or party is requested herein, give his or her (i) name, (ii) current address, (iii) phone number, and (iv) employer's name, (v) employer's address and (vi) employer's phone number, if any.

B.     When identification of any document, letter or other writing is requested, give (i) its date, (ii) the author or addressor, (iii) the addressee, (iv) the recipients of all copies, (v) the present location thereof, (vi) the identity of the person presently in custody, control of possession thereof, and (vii) state whether you will produce it upon request without the necessity of a court order.

C.    As used herein, "Defendant" and "Defendant/Third-Party Plaintiff" means Nitin M. Amersey, as well as his agents, attorneys, representatives or any other person acting on his behalf.

D.    As used herein, "Freddie Mac", "Plaintiff," "you" and "your" refer to Freddie Mac and its officers, directors, employees, agents and all other persons acting or purporting to act on its behalf.

E.    As used herein, "document" includes the original and any copy of correspondence, notes, records, schedules, tables, charts, reports, tape recordings, memoranda, telegrams, letters, invoices, orders, order forms, messages (including reports of telephone conversations and conferences), minutes, inter-office and intra-office communications and all other written or printed matter of any kind.

F.    As used herein, "Loan" means the mortgage loan made by Bank of America ("BOA") to Third-Party Plaintiff June 20, 2008, in the amount of Three Hundred Seventy-One Thousand Six Hundrd and 00/100 ($371,6,000.00), evidenced by a note in that amount made by Third-Party Plaintiff to BOA dated June 20, 2008 (the "Note") and secured by a mortgage granted by Third-Party Plaintiff to BOA on June 20, 2008 (the "Mortgage"), on the property commonly known as 5 Appleshire Drive, Freeland, Michigan 48623 (the "Property"), the Mortgage being the subject of a purported assignment from BOA to Ocwen dated September 4, 2012.

## INTERROGATORIES

1.  Identify each person who answers these interrogatories and each person (attach pages if necessary) who assisted, including attorneys, accountants, employees of third party entities, or any other person consulted, however briefly, on the content of any answer to these interrogatories.
ANSWER:

2.  For each of the above persons, please state whether they have personal knowledge regarding the subject loan transaction.
ANSWER:

3.  Other than people identified above, identify any and all persons who have or had personal knowledge of the subject loan transaction, underwriting of the subject loan transaction, securitization, sale, transfer, assignment or hypothecation of the subject loan transaction, modification of the subject loan transaction, or the decision to seek enforcement (including, but not limited to, foreclosure) of the note or mortgage in the subject loan transaction.
ANSWER:

4.  Identify by name and title any person(s) in custody of any document which refers to any instruction or authority to enforce the note or mortgage in the subject loan transaction.

3

ANSWER:

5. State the names of all persons or entities, in order of assignment, who at any time were constructive holders or holders in due course of the note obligating Defendant in the subject loan transaction.
ANSWER:

6. Describe in detail Freddie Mac's role in the subject loan transaction as an investor.
ANSWER:

7. Describe in detail Freddie Mac's oversight role in ensuring that HAMP as well as Freddie Mac's modification guidelines, rules and regulations are followed and were followed in this matter.
ANSWER:

8. Describe in detail how and why Freddie Mac can provide oversight in ensuring that Freddie Mac modification and HAMP guidelines, rules and regulations are followed on the one hand and foreclose against Defendant on the other.
ANSWER:

9. Regarding the subject note, specify the dates of any endorsements, assignments and/or allonges, as well as the name, address, telephone number, job title, and job description of the signatories on any and all endorsements, assignments and/or allonges, including their relationship to Freddie Mac, on the date of any such endorsement, assignment or allonge.
ANSWER:

10. Have you ever received any bailout money of any kind from the United States government, either pursuant to TARP or otherwise? If so, please identify the amount of money you received and how and when the money was spent/used/allocated. In your answer, please disclose with specificity the extent to which any such funds were used to provide loans, funding for loans or a market for loans for homeowners in Saginaw County, Michigan.
ANSWER:

11. Identify each person consulted in the preparation of your Answers to these Interrogatories and Requests for Production of Documents.
ANSWER:

12. Identify each document referred to or consulted by you in preparation of your Answers to these Interrogatories and Requests for Production of Documents.
ANSWER:

13. Identify each person you intend to call as a witness in this action.

ANSWER:

14. Describe the policy and criteria guidelines that Freddie Mac used in determining the basis for the default under the subject mortgage loan other than the non-payment of the monthly payment amount.
ANSWER:

15. Describe the policy and criteria guidelines that Freddie Mac uses for inquiries and analysis for effectuating reasonable modifications for borrowers.
ANSWER:

16. Describe and identify in detail any and all policies, guidelines, rules, regulations and memoranda that outline Freddie Mac's procedures to ensure compliance with the Making Home Affordable Act for residential loan modifications.
ANSWER:

17. When and how (describe in detail) did Freddie Mac become the owner of the subject mortgage and/or note?
ANSWER:

18. Describe in detail Freddie Mac's relationship to the subject mortgage loan.
ANSWER:

19. Is the subject mortgage loan securitized in any fashion?  If so, explain how in detail.
ANSWER:

20. How much has Freddie Mac paid to any servicer or lender in connection with the subject mortgage and/or loan?  Please describe any and all payments in detail.
ANSWER:

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Identify and produce all documents that were provided to Defendant as part of any modification of the subject mortgage loan.
ANSWER:


2. Produce the complete servicing file for Defendant including all notes, memoranda, electronic data, payment history, and correspondence regarding the subject mortgage loan.
ANSWER:


3. Identify and produce all disclosure statements or other notices of Defendant's rights given to Defendant in connection with any modification options given to Defendant.
ANSWER:


4. Produce a copy of the subject note and any and all assignments, endorsements, or allonges.
ANSWER:


5. Identify and produce all accountings, ledger cards, ledger sheets, or other documents, including computer data, reflecting payments, charges, and costs incurred on the subject mortgage loan.
ANSWER:


6. Identify and produce all correspondence in Freddie Mac's possession, custody, or control between anyone concerning any modification or modification negotiations regarding the subject loan transaction.
ANSWER:


7. Identify and produce all telephone log sheets or other internal memoranda or notes in Freddie Mac's possession, custody, or control concerning any mortgage loan made to Defendant, including but not limited to, the subject mortgage loan.
ANSWER:


8. Identify and produce any and all contract or agreements between Freddie Mac and any originator, owner or servicer of the subject mortgage loan, including all exhibits and schedules thereto.
ANSWER:

9. Identify and produce all documents containing the statements, recollections, or impressions of witnesses with knowledge of any aspect of any mortgage loan made to Defendant, including but not limited to, the subject mortgage loan, whether prepared by Freddie Mac, its agents or others.
ANSWER:


KATHY H. MURPHY

Kathy H. Murphy (P51422)
Attorney for Third-Party Plaintiff
P.O. Box 51164
Livonia, MI 48150
(734) 578-1887
Email: kathyhmurphy@gmail.com

DATED: August 2, 2013

7

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on August 2, 2013, by first-class U.S. mail to Donald King, 31440 Northwestern Highway, Suite 200, Farmington Hills, Michigan 48334.

_____
Kathy H. Murphy

8

STATE OF MICHIGAN

IN THE 70TH JUDICIAL DISTRICT COURT

FEDERAL HOME LOAN MORTGAGE
CORPORATION,

      Plaintiff,

v.

NITIN M. AMERSEY,

      Defendant/Third-Party Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,

      Third-Party Defendant.

Case No. 13-1199-LT(5)
Hon. M. Randall Jurrens

| | |
|---|---|
| TROTT & TROTT, P.C.<br>Donald J. King (P55358)<br>Attorney for Plaintiff<br>31440 Northwestern Highway, Suite 200<br>Farmington Hills, MI 48334<br>(248) 723-6452 | JEROME D. GOLDBERG, PLLC<br>Jerome D. Goldberg (P61678)<br>Attorneys for Defendant/Third-Party Plaintiff<br>2921 East Jefferson, Suite 205<br>Detroit, MI 48207<br>(313) 393-6001 |
| HERTZ SCHRAM PC<br>Deborah S. Lapin (P59027)<br>Attorney for Third-Party Defendant Ocwen<br>Loan Servicing, LLC<br>1760 S. Telegraph Road, Suite 300<br>Bloomfield Hills, MI 48302<br>(248) 335-5000 | Kathy H. Murphy (P51422)<br>Attorney for Defendant/Third-Party Plaintiff<br>P.O. Box 51164<br>Livonia, MI 48150<br>(734) 578-1887 |

LAW OFFICES HERTZ SCHRAM PC

### THIRD-PARTY DEFENDANT OCWEN LOAN SERVICING, LLC'S ANSWER TO DEFENDANT/THIRD-PARTY PLAINTIFF NITIN M. AMERSEY'S THIRD-PARTY COMPLAINT

Third-Party Defendant Ocwen Loan Servicing, LLC ("Ocwen"), by and through its

attorneys, Hertz Schram PC, for its Answer to Defendant/Third-Party Plaintiff Nitin M.

Amersey's ("Third-Party Plaintiff") Third-Party Complaint, states as follows:

## JURISDICTION/PARTIES

1.     Ocwen neither admits nor denies the allegations contained in this Paragraph for the reason that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

2.     Ocwen admits the allegations contained in this Paragraph only to the extent that it is a limited liability company.

3.     Ocwen neither admits nor denies the allegations contained in this Paragraph for the reason that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

4.     Ocwen denies the allegations contained in this Paragraph as Third-Party Plaintiff is not entitled to any relief as his claims are without merit.

## FACTUAL BACKGROUND

5.     Ocwen repeats and incorporates its responses to Paragraphs 1 through 4 as if fully stated herein.

6.     No response is necessary as the referenced Exhibit speaks for itself.   To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

7.     No response is necessary as the referenced Exhibit speaks for itself.   To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

8.     Ocwen neither admits nor denies the allegations contained in this Paragraph for the reason that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

2

9.     Ocwen neither admits nor denies the allegations contained in this Paragraph for the reason that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

10.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.  Ocwen neither admits nor denies the allegations that Third-Party Plaintiff promptly submitted his application for the reason that it is without knowledge or information sufficient to form a belief as to the truth of the allegations.

11.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

12.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

13.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

14.     To the extent that a response is required in regard to the Exhibit referenced in the first sentence of this Paragraph, the Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.  Ocwen denies the remaining allegations in this Paragraph for the reason that they are untrue.

15.     To the extent that a response is required in regard to the Exhibit referenced in the first sentence of this Paragraph, the Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.  Ocwen denies the remaining allegations in this Paragraph for the reason that they are untrue.

LAW OFFICES HERTZ SCHRAM PC

3

16.     To the extent that a response is required in regard to the Exhibit referenced in the first sentence of this Paragraph, the Exhibit speaks for itself.   To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue. Ocwen denies the remaining allegations in this Paragraph for the reason that they are untrue.

17.     No response is necessary as the referenced Exhibits speak for themselves.   To the extent that any allegations are inconsistent with the referenced Exhibits, Ocwen denies the same as untrue.

18.     No response is necessary as the referenced Exhibit speaks for itself.   To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.   By way of clarification, the Exhibits referenced (Exhibits 13 and 14) clearly state that the review of the Borrower Response Package and the process of foreclosure may proceed at the same time.   Ocwen further denies any implied allegation in this Paragraph that it failed to comply with Michigan's foreclosure by advertisement statutes.

19.     No response is necessary as the referenced Exhibit speaks for itself.   To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

20.     No response is necessary as the referenced Exhibit speaks for itself.   To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.   By way of clarification, the Exhibit referenced (Exhibit 16) clearly states that the review of the Borrower Response Package and the process of foreclosure may proceed at the same time.   Ocwen further denies any implied allegation in this Paragraph that it failed to comply with Michigan's foreclosure by advertisement statutes.

21.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

4

22.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

23.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

24.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

25.     No response is necessary as the referenced Exhibits speak for themselves.  To the extent that any allegations are inconsistent with the referenced Exhibits, Ocwen denies the same as untrue.  By way of clarification, the Exhibits referenced (Exhibits 17, 18 and 19) clearly state that the review of the Borrower Response Package and the process of foreclosure may proceed at the same time.  Ocwen further denies any implied allegation in this Paragraph that it failed to comply with Michigan's foreclosure by advertisement statutes.

26.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

27.     No response is necessary as the referenced Exhibit speaks for itself.  To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.  By way of clarification, the Exhibit referenced (Exhibit 20) clearly states that the review of the Borrower Response Package and the process of foreclosure may proceed at the same time.  Ocwen further denies any implied allegation in this Paragraph that it failed to comply with Michigan's foreclosure by advertisement statutes.

WHEREFORE, Defendant Ocwen requests that this Honorable Court dismiss this action, with prejudice, and that a judgment of no cause of action be entered in favor of Defendant Ocwen, with costs and attorney fees awarded to it and for any other relief as may be proper.

## COUNT 1 – ILLEGAL FORECLOSURE
## IN VIOLATION OF MCL 600.3204, 3205a AND 3205c

28.    Ocwen repeats and incorporates its responses to Paragraphs 1 through 27 as if fully stated herein.

29.    No response is required as the statute speaks for itself.

30.    No response is required as the statute speaks for itself.

31.    Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

32.    No response is necessary as the referenced Exhibit speaks for itself. To the extent that any allegations are inconsistent with the referenced Exhibit, Ocwen denies the same as untrue.

33.    Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

34.    Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

35.    Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

36.    Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

37.    Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

38.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

39.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

40.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

41.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

42.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

43.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

44.     No response is required as the statute speaks for itself.

45.     No response is required as the statute speaks for itself.  Ocwen neither admits nor denies the allegations contained in the last sentence of this Paragraph for the reason that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

46.     Ocwen neither admits nor denies the first and third sentences of this Paragraph for the reason that it lacks sufficient information to form a belief as to the truth of the allegations contained therein.   As to the allegation contained in the second sentence of this Paragraph, no response is required as the Sheriff's Deed speaks for itself.  Ocwen denies the allegation in the final sentence of this Paragraph for the reason that they are untrue.

47.     Ocwen denies the allegations contained in this Paragraph for the reason that they are untrue.

7

WHEREFORE, Defendant Ocwen requests that this Honorable Court dismiss this action, with prejudice, and that a judgment of no cause of action be entered in favor of Defendant Ocwen, with costs and attorney fees awarded to it and for any other relief as may be proper.

Respectfully Submitted,

HERTZ SCHRAM PC

Deborah S. Lapin (P59027)
Attorney for Third-Party Defendant Ocwen
Loan Servicing, LLC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI  48302
(248) 335-5000

Dated: July 26, 2013

STATE OF MICHIGAN

IN THE 70TH JUDICIAL DISTRICT COURT

FEDERAL HOME LOAN MORTGAGE
CORPORATION,

        Plaintiff,

v.

NITIN M. AMERSEY,

        Defendant/Third-Party Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,

        Third-Party Defendant.

Case No. 13-1199-LT(5)
Hon. M. Randall Jurrens

/

| | |
|---|---|
| TROTT & TROTT, P.C. | JEROME D. GOLDBERG, PLLC |
| Donald J. King (P55358) | Jerome D. Goldberg (P61678) |
| Attorney for Plaintiff | Attorneys for Defendant/Third-Party Plaintiff |
| 31440 Northwestern Highway, Suite 200 | 2921 East Jefferson, Suite 205 |
| Farmington Hills, MI 48334 | Detroit, MI 48207 |
| (248) 723-6452 | (313) 393-6001 |
| | |
| HERTZ SCHRAM PC | Kathy H. Murphy (P51422) |
| Deborah S. Lapin (P59027) | Attorney for Defendant/Third-Party Plaintiff |
| Attorney for Third-Party Defendant Ocwen | P.O. Box 51164 |
| Loan Servicing, LLC | Livonia, MI 48150 |
| 1760 S. Telegraph Road, Suite 300 | (734) 578-1887 |
| Bloomfield Hills, MI 48302 | |
| (248) 335-5000 | |

/

## THIRD-PARTY DEFENDANTS' AFFIRMATIVE DEFENSES

    1.    Third-Party Plaintiff's claims are barred by his failure to state a claim upon which relief can be granted.

    2.    Third-Party Plaintiff's claims may be barred, in whole or in part, by the statute of limitations.

LAW OFFICES HERTZ SCHRAM PC

3.     Third-Party Plaintiff's claims are barred by his failure to plead with required specificity the causes of action.

4.     The court may lack jurisdiction over this matter.

5.     Third-Party Plaintiff's claims are barred by his failure to state a valid cause of action against Third-Party Defendant Ocwen.

6.     Third-Party Plaintiff's claims are barred by the doctrine of estoppel.

7.     Third-Party Plaintiff's claims are barred by the statute of frauds.

8.     Third-Party Plaintiff's claims are barred by the doctrine of waiver.

9.     Third-Party Plaintiff's claims are barred by unclean hands.

10.    Third-Party Plaintiff's claims are barred by the doctrine of laches.

11.    Third-Party Plaintiff's claims are barred by lack of consideration.

12.    Third-Party Plaintiff failed to name all necessary parties to this action.

13.    Third-Party Plaintiff has no interest in the property based upon the expiration of the statutory redemption period.

14.    Third-Party Plaintiff lacks standing to bring this action based upon the expiration of the statutory redemption period.

15.    Third-Party Plaintiff is obligated to Third-Party Defendant Ocwen pursuant to the terms and conditions of the Mortgage.

16.    Third-Party Plaintiff is obligated to Third-Party Defendant Ocwen pursuant to the terms and conditions of the Note.

17.    Third-Party Plaintiff complied with all requirements of Michigan's foreclosure by advertisement statutes.

18.    MCL 600.3205 does not permit a completed Sheriff's Sale to be set aside.

19.    Third-Party Plaintiff failed to bring his claim for an alleged violation of MCL 600.3205 prior to the foreclosure sale or during the statutory redemption period.

20.    Third-Party Plaintiff failed to mitigate his damages.

21.    Third-Party Plaintiff suffered no loss or damage as he failed to redeem the property.

Third-Party Defendant Ocwen reserves the right to allege other defenses and/or amend this Answer consistent with the knowledge or information that may be forthcoming during discovery in this action.

                                        Respectfully Submitted,

                                        HERTZ SCHRAM PC


                                        Deborah S. Lapin (P59027)
                                        Attorney for Third-Party Defendant Ocwen
                                        Loan Servicing, LLC
                                        1760 S. Telegraph Road, Suite 300
                                        Bloomfield Hills, MI 48302
                                        (248) 335-5000

Dated: July 26, 2013

LAW OFFICES HERTZ SCHRAM PC

11

STATE OF MICHIGAN

IN THE 70TH JUDICIAL DISTRICT COURT

FEDERAL HOME LOAN MORTGAGE
CORPORATION,

        Plaintiff,

v.

NITIN M. AMERSEY,

        Defendant/Third-Party Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,

        Third-Party Defendant.

Case No. 13-1199-LT(5)
Hon. M. Randall Jurrens

---

| TROTT & TROTT, P.C. | JEROME D. GOLDBERG, PLLC |
|---|---|
| Donald J. King (P55358) | Jerome D. Goldberg (P61678) |
| Attorney for Plaintiff | Attorneys for Defendant/Third-Party Plaintiff |
| 31440 Northwestern Highway, Suite 200 | 2921 East Jefferson, Suite 205 |
| Farmington Hills, MI 48334 | Detroit, MI 48207 |
| (248) 723-6452 | (313) 393-6001 |
| | |
| HERTZ SCHRAM PC | Kathy H. Murphy (P51422) |
| Deborah S. Lapin (P59027) | Attorney for Defendant/Third-Party Plaintiff |
| Attorney for Third-Party Defendant Ocwen | P.O. Box 51164 |
| Loan Servicing, LLC | Livonia, MI 48150 |
| 1760 S. Telegraph Road, Suite 300 | (734) 578-1887 |
| Bloomfield Hills, MI 48302 | |
| (248) 335-5000 | |

*LAW OFFICES HERTZ SCHRAM PC*

## **PROOF OF SERVICE**

On July 26, 2013, Deborah A. Cripps, being first duly sworn, deposes and says that she

is employed by the law office of Hertz Schram PC and, in that capacity, did serve a copy of

Third-Party Defendant Ocwen Loan Servicing, LLC's Answer to Defendant/Third-Party

Plaintiff Nitin M. Amersey's Third-Party Complaint and this Proof of Service upon the

following parties by enclosing it in a sealed envelope, postage fully paid and depositing it into

the United State mail addressed to:

Donald J. King, Esq.
TROTT & TROTT, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, MI  48334

Jerome D. Goldberg, Esq.
JEROME D. GOLDBERG, PLLC
2921 East Jefferson, Suite 205
Detroit, MI  48207

Kathy H. Murphy (P51422)
P.O. Box 51164
Livonia, MI  48150

/Deborah A. Cripps, Legal Assistant
Hertz Schram PC

LAW OFFICES HERTZ SCHRAM PC

STATE OF MICHIGAN

70TH JUDICIAL DISTRICT COURT

FEDERAL HOME LOAN MORTGAGE
CORPORATION.

      Plaintiff.

v

NITIN M. AMERSEY and ALL OTHER
OCCUPANTS.

      Defendants.

Case No. 13-1199-LT(5)
Hon.

2013 JUL -5 P 12: 16

---

Donald J. King (P55358)
Thomas A. Balinski (P41771)
TROTT & TROTT, P.C.
Attorneys for Plaintiff
31440 Northwestern Hwy., Suite 200
Farmington Hills. Michigan 48334
(248) 642-2515
T&T No. 318199E03

Jerome D. Goldberg (P61678)
JEROME D. GOLDBERG. PLLC
Attorneys for Defendant
2921 East Jefferson. Suite 205
Detroit, Michigan 48207
(313) 393-6001

Kathy H. Murphy (P51422)
Attorney for Defendant
P.O. Box 51164
Livonia, Michigan 48150
(734) 578-1887

---

TROTT & TROTT. P.C.
31440 NORTHWESTERN
HIGHWAY, SUITE 200
FARMINGTON HILLS, MI
48334-2525

### ORDER FOR ESCROW

At a session of said Court. held in the City of Saginaw and
County of Saginaw, State of Michigan
on: _July 8th, 2013_

PRESENT: HON. _M. Randall Jurrens_
                    (P37633)
                    District Court Judge

This matter having been stipulated by the parties hereto and the Court being

otherwise fully advised in the premises;

**IT IS HEREBY ORDERED** that the Defendant shall deposit, as escrow. with the

Court as follows:

1

$2000 on or before June 17, 2013; and

$2000 monthly beginning July 15, 2013, until further order of the Court.

**IT IS FURTHER ORDERED** that payments must be paid to the Court within 7 days of each payment's due date.

**IT IS FURTHER ORDERED** that Plaintiff must not interfere with Defendants' obligation to comply with this order.

**IT IS FURTHER ORDERED** that if Defendants do not comply with this order, Defendants waive the right to a jury trial as to the possession issue.

**IT IS SO ORDERED.**

*This Order does not resolve the last pending claim*
*and does not close this case.*

_____
District Court Judge

The undersigned stipulate to the
entry of the above Order and waive
notice of hearing:

_____
Thomas A. Balinski (P41771)
TROTT & TROTT, PC
Attorneys for Plaintiff

Dated: July/June 3, 2013

**A TRUE COPY**
CHERYL B. JARZABKOWSKI
Clerk of the Court

_____
Clerk's Initials

TROTT & TROTT, P.C.
31440 NORTHWESTERN
HIGHWAY, SUITE 200
FARMINGTON HILLS, MI
48334-2525

_____
Kathy H. Murphy (P51422)
Attorney for Defendants

Dated: June 13, 2013

2

STATE OF MICHIGAN
IN THE 70th JUDICIAL DISTRICT COURT

Federal Home Loan
Mortgage Corporation,

      Plaintiff,

v.

Nitin M. Amersey,

      Defendant.

Nitin M. Amersey,

      Third-Party Plaintiff,

v.

Ocwen Loan Servicing, LLC,

      Third-Party Defendant

Case No. 13-1199-LT(5)

| | |
|---|---|
| Trott & Trott, P.C.<br>Donald J. King (P55358)<br>Attorney for Plaintiff<br>31440 Northwestern Hwy., Suite 200<br>Farmington Hills, MI 48334<br>(248) 723-6452 | Jerome D. Goldberg, PLLC<br>Jerome D. Goldberg (P61678)<br>Attorneys for Defendant and Third-Party<br>Plaintiff<br>2921 East Jefferson, Suite 205<br>Detroit, MI 48207<br>(313) 393-6001<br><br>and<br><br>Kathy H. Murphy (P51422)<br>Attorney for Defendant and Third-Party<br>Plaintiff<br>P.O. Box 51164<br>Livonia, MI 48150<br>(734) 578-1887 |

## DEFENDANT'S ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND THIRD-PARTY COMPLAINT AGAINST OCWEN LOAN SERVICING, LLC

NOW COMES Defendant, Nitin M. Amersey, by and through his attorneys Jerome D.

Goldberg, PLLC, and Kathy H. Murphy, and in answer to Plaintiff's complaint, states as follows.

1.    N/A

2.    N/A

3.    N/A

4.    Admit. Defendant lives at the premises.

5.    Deny. Neither Plaintiff nor its mortgage servicer, Ocwen Loan Servicing, LLC ("Ocwen"), complied with the regulations set forth in MCL 600.3204, 600.3205a or 600.3205c or with the federal regulations of the Home Affordable Modification Program ("HAMP") developed pursuant to the Emergency Economic Stabilization Act, 12 USC 5219. Thus, the foreclosure sale and subsequent eviction are illegal under both Michigan law and federal law.

Pursuant to MCL 600.3204(4), failure to abide by requirements in MCL 600.3205a or 600.3205c prohibits a lender from foreclosing on a borrower by advertisement. Plaintiff, through its servicer Ocwen, violated MCL.3205a by failing to send the notice required thereunder advising Defendant of the information contained therein and also violated 600.3205c by failing to extend a permanent modification to a Defendant, a qualified borrower, or to provide Defendant with Ocwen's calculations.

In addition, Defendant was not offered a loan modification according to the terms of the federal Home Affordable Modification Program, under which the servicers for loans owned or insured by Plaintiff are obligated to evaluate borrowers for a loan modification pursuant to the HAMP and to suspend foreclosure activity pending that evaluation. (**Exhibit 1**) Defendant qualified for a modification under the HAMP but was illegally denied a modification pursuant to its terms. Defendant provided Ocwen with evidence of a monthly income of $6,500.00. Under the HAMP guidelines, 31% of Defendants' gross income would result in a payment of $2,015.00. The property sold at Sheriff's sale for $395,987.24. That amount amortized over 40

2

years at 2% would result in a monthly principal and interest payment of $1,199.15, plus approximately $800 for taxes and insurance, for a total monthly payment of $1,999.15, which is below the 31% HAMP threshold.

6.    Admit.  Plaintiff Federal Home Mortgage Corporation, a/k/a Freddie Mac, is a governmental unit which is required to subject homes where it owns or backs the loans to loan modifications pursuant to the Home Affordable Modification Program and Emergency Economic Stabilization Act, 12 USC 5219.  (See Exhibit 1)  Because Freddie Mac is a governmental unit, and was on information and belief the owner of Defendant's loan at the time of the Sheriff's sale on October 26, 2012, the Sheriff's sale constitutes a deprivation of Defendant's property interest without due process of law in violation of the 5th amendment to the U.S. Constitution.  See *Federal Home Loan Mortgage Corporation v Kelley*, 30th Circuit Court for the County of Ingham, Case No. 12-000885-AV (attached as Exhibit 2), in which Judge Aquilina held that Freddie Mac, also the plaintiff in that case, was a state actor.  In 2008, pursuant to the federal Economic Recovery Act of 2008, Freddie Mac, as well as the Federal National Mortgage Association, a/k/a Fannie Mae, were both taken over by the federal government's Federal Housing Finance Agency, which, as Judge Aquilina held, has authority over 100% of the stock, all officers of the company, and every director.

7.    Defendant neither admits nor denies.

8.    Admit.

9.    Admit Plaintiff asks for a judgment of possession.

10.    Defendant requests a jury trial in this matter.

WHEREFORE Defendant respectfully requests the Plaintiff's complaint be dismissed.

3

## AFFIRMATIVE DEFENSES

1.     The foreclosure sale and subsequent attempted eviction are illegal under Michigan law and federal law.  Neither Plaintiff nor its mortgage servicer, Ocwen, complied with the regulations set forth in MCL 600.3204, 600.3205a or 600.3205c or with the federal regulations of the Home Affordable Modification Program developed pursuant to the Emergency Economic Stabilization Act, 12 USC 5219.

2.     Pursuant to MCL 600.3204(4), failure to abide by requirements in MCL 600.3205a or 600.3205c prohibits a lender from foreclosing on a borrower by advertisement.

3.     Plaintiff, through its servicer Ocwen, violated MCL.3205a by failing to send the notice required thereunder advising Defendant of the very detailed information required including the right of the borrower to a meeting with the lender's representative to discuss and be properly evaluated for a loan modification.  Plaintiff, through Ocwen, also violated 600.3205c by failing to extend a permanent modification to a Defendant, a qualified borrower, or to provide Defendant with Ocwen's calculations.

4.     In addition, Defendant was not offered a loan modification according to the terms of the federal Home Affordable Modification Program developed pursuant to the Emergency Economic Stabilization Act, 12 USC 5219, under which the servicers for Freddie Mac owned or insured loans are obligated to evaluate borrowers for a loan modification pursuant to the HAMP and suspend foreclosure activity pending that evaluation.  **(See Exhibit 1)** Defendant qualified for a modification under the HAMP but was illegally denied a modification pursuant to its terms. Defendant provided Ocwen with evidence of a monthly income of over $6,500.  Under the HAMP guidelines, 31% of Defendants' gross income would result in a payment of $2,015.00. The property sold at sheriff's sale for $395,987.24.  That amount amortized over 40 years at 2%

4

would result in a principal and interest payment of $1,199.15, plus approximately $800 more for taxes and insurance, resulting in a monthly payment of $1,999.15, which is under the 31% HAMP threshold. Failure to modify a loan in conformance with federal regulations has been held to be a defense to foreclosure under Michigan law. (Exhibit 3, Judge Donald Miller opinion)

5.    Because Freddie Mac is a governmental unit, and was on information and belief the owner of Defendant's loan at the time of the Sheriff's sale on October 19, 2012, the Sheriff's sale constitutes a deprivation of Defendant's property interest without due process of law in violation of the 5th amendment to the U.S. Constitution. (See Exhibit 2, attached)

6.    Plaintiff has failed to state a claim upon which relief can be granted.

WHEREFORE, Defendant Nitin M. Amersey requests that this action be dismissed or set for trial for all issues so triable.

Respectfully submitted,

JEROME D. GOLDBERG, PLLC

Jerome D. Goldberg (P61678)
Attorneys for Defendant and Third-Party Plaintiff
2921 East Jefferson, Suite 205
Detroit, MI 48207
Phone (313) 393-6001

and

Kathy H. Murphy (P51422)
Attorney for Defendant and Third-Party Plaintiff
P.O. Box 51164
Livonia, MI 48150
Phone (734) 578-1887

DATED: June 6, 2013

5

## Jury Demand

Defendant demands a jury trial in the above cause.

Respectfully submitted,

JEROME D. GOLDBERG, PLLC

Jerome D. Goldberg (P61678)
Attorneys for Defendant and Third-Party
Plaintiff
2921 East Jefferson, Suite 205
Detroit, MI 48207
Phone (313) 393-6001

and

Kathy H. Murphy (P51422)
Attorney for Defendant and Third-Party
Plaintiff
P.O. Box 51164
Livonia, MI 48150
Phone (734) 578-1887

DATED: June 6, 2013

7

Approved, SCAO

| | | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|---|

| STATE OF MICHIGAN<br>70th JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>13-1199-LT(5) |
|---|---|---|

**Court address**

111 S. Michigan Avenue, Saginaw, MI 48602-2019

**Court telephone no.**

(989) 790-5562

| Plaintiff's name(s), address(es), and telephone no(s).<br><br>Nitin M. Amersey<br>5 Appleshire<br>Freeland, Michigan 48623<br>(989) 414-1407 | v | Defendant's name(s), address(es), and telephone no(s).<br><br>Ocwen Loan Servicing, LLC, c/o Resident Agent,<br>CSC- Lawyers Incorporating Company<br>601 Abbot Road<br>East Lansing, Michigan 48823 (877) 858-3855 |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.

Jerome D. Goldberg, PLLC / Jerome D. Goldberg (P61678)
2921 E. Jefferson Ave, Ste 205, Detroit, MI 48207
(313) 393-6001
Kathy H. Murphy (P51422)
P.O. Box 51164, Livonia, MI 48150 (734) 578-1887

---

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>6/6/13 | This summons expires | Court clerk<br>CHERYL B. JARZABKOWSKI<br>COURT ADMINISTRATOR |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

---

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Freeland, Saginaw, Michigan | Defendant(s) residence (include city, township, or village)<br>State of Delaware |
|---|---|
| Place where action arose or business conducted<br>County of Saginaw, Michigan | |

| 06/06/2013<br>Date | Signature of attorney/plaintiff<br>Kathy H Murphy P51422 |
|---|---|

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) **SUMMONS AND COMPLAINT** MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

## DEFENDANT'S THIRD-PARTY COMPLAINT AGAINST
## OCWEN LOAN SERVICING, LLC

NOW COMES Third-Party Plaintiff Nitin M. Amersey, by and through his attorneys, Jerome D. Goldberg, PLLC, and Kathy H. Murphy, and for his Complaint against Third-Party Defendant Ocwen Loan Servicing, LLC, states as follows:

### JURISDICTION / PARTIES

1.  Third-Party Plaintiff Nitin M. Amersey is a resident of Freeland, Saginaw County, Michigan.

2.  Third-Party Defendant Ocwen Loan Servicing, LLC ("Ocwen"), is a Delaware limited liability company doing business in Saginaw County, Michigan.

3.  The incident which is the subject of this action took place in Saginaw County, Michigan.

4.  This action is for injunctive relief pursuant to MCR 3.310, declaratory relief pursuant to MCR 2.605 and damages.  This court has jurisdiction over this matter pursuant to MCR 4.201G.

### FACTUAL BACKGROUND

5.  Third-Party Plaintiff incorporates by reference paragraphs 1-4.

6.  On June 20, 2008, Third-Party Plaintiff granted Bank of America, N.A. ("BA"), a mortgage (the "Mortgage") (**Exhibit 4**) on Third-Party Plaintiff's home located at 5 Appleshire, Freeland, MI 48623, to secure a promissory note to BA in the amount of $371,600.00.

7.  On September 4, 2012, BA assigned the Mortgage to Ocwen (**Exhibit 5**).

8.  In early 2010, Third-Party Plaintiff's house payments doubled from approximately $2,000.00 to $3,926.04 because of a property tax issue.  Third-Party Plaintiff's taxes should have been homesteaded, but no responsible party filed a homestead form.  BA

8

overpaid taxes and would not take responsibility for contacting the taxing authority to correct the mistake, and instead charged Third-Party Plaintiff for the mistake.

9.  In addition, Third-Party Plaintiff suffered from some health problems that caused financial hardship.

10.  By letter dated March 26, 2012, BA noted that Third-Party Plaintiff had missed several mortgage payments and encouraged him to apply for a HAMP modification (**Exhibit 6**). Third-Party Plaintiff promptly submitted his application in April of 2012.

11.  By letter dated May 9, 2012, BA acknowledged receipt of Third-Party Plaintiff's application. (**Exhibit 7**)

12.  On May 24, 2012, in the midst of BA's evaluation of Third-Party Plaintiff's HAMP modification application, BA informed Third-Party Plaintiff that it was transferring the servicing of Third-Party Plaintiff's mortgage loan to Ocwen effective June 18 2012. (**Exhibit 8**)

13.  Just one day later, on May 25, 2012, BA requested more information from Third-Party Plaintiff regarding his HAMP modification (**Exhibit 9**), which Third-Party Plaintiff provided.

14.  In June of 2012, Ocwen sent Third-Party Plaintiff an application for a modification requesting return of the package in 30 days. (**Exhibit 10**) Ocwen ignored the previously supplied modification package that Third-Party Plaintiff had supplied to the prior servicer, BA. Despite this fact, Third-Party Plaintiff provided the requested information and, after frequent requests for additional information, which is the practice of Ocwen and all major mortgage servicers, by mid-September of 2012 Ocwen had received the requested information for Third-Party Plaintiff to be evaluated for a loan modification.

9

15. Third-Party Plaintiff received correspondence from Ocwen dated July 6, 2012 (Exhibit 11), informing him that he was in arrears, in default and that he owed $19,898.12 and that failure to bring his account current could result in Ocwen's election to "exercise [its] right to foreclose". The letter did not contain the information mandated by MCL 600.3205a (set forth below).

16. Third-Party Plaintiff received several other letters from Ocwen in July and August of 2012 indicating that he was behind on his payments, as well as another application package. None of those letters contained the mandatory information. (Exhibit 12)

17. By letter dated September 19, 2012, Ocwen acknowledged receipt of Third-Party Plaintiff's application. (Exhibit 13) By letter dated September 20, 2012, Ocwen requested further information (Exhibit 14), stating that failure to provide the documents by October 5, 2012, "may delay your application process."

18. The above letter failed to mention that Ocwen had already published foreclosure notices on September 12th and September 19th setting forth a Sheriff's sale date of October 12, 2012. (Exhibit 15)

19. By letter dated September 25, 2012, Ocwen requested further documentation, again stating that failure to provide the documents by October 10, 2012, "may delay your application process." (Exhibit 16)

20. The above letter also failed to mention that yet another foreclosure notice would be published the next day, announcing the planned Sheriff's sale of October 12th. (See Exhibit 15)

21. With a letter dated October 5, 2012, Third-Party Plaintiff submitted requested documentation.

10

22.    By letters dated October 9, 2012, Ocwen acknowledged receipt of Third-Party Plaintiff's package and requested further information, again stating that failure to provide the documents by October 24, 2012, "may delay your application process." (Exhibit 17).

23.    A letter dated October 11, 2012, from Ocwen contained the same request by stated that failure to provide the documents by October 26, 2012, "may delay your application process." (Exhibit 18).

24.    Via another letter, also dated October 11, 2012, Ocwen submitted the same application package to Third-Party Plaintiff that it had submitted in June and August, this time requesting return of the package by November 10, 2012. (Exhibit 19)

25.    The above letters also failed to mention that a final foreclosure notice had been published on October 3rd of the Sheriff's sale planned for October 12th. (See Exhibit 15)

26.    By letter dated October 25, 2012, Ocwen again acknowledged receipt of Third-Party Plaintiff's application for assistance and stated that it was "processing [his] request as quickly as possible." (Exhibit 20)

27.    The above letter failed to mention that Third-Party Plaintiff's property had *already been sold* at a Sheriff's sale on October 19, 2012. (Exhibit 21)

## COUNT I – ILLEGAL FORECLOSURE
### IN VIOLATION OF MCL 600.3204, 3205a and 3205c

28.    Third-Party Plaintiff incorporates by reference paragraphs 1-27.

29.    MCL 600.3204(4) provides that a party shall not commence proceedings to foreclose by advertisement if one or more of the following apply:  "(a) Notice has not been mailed to the mortgagor as required by section 3205a."

30.    MCL 600.3205a(1) provides that the written notice referenced above shall contain *all of the following information* (emphasis added):

11

(a) The reasons that the mortgage loan is in default and the amount that is due and owing under the mortgage loan.

(b) The names, addresses, and telephone numbers of the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer.

(c) A designation of 1 of the persons named in subdivision (b) as the person to contact and that has the authority to make agreements under sections 3205b and 3205c. ...

(d) That within 30 days after the notice is sent, the borrower may, either by contacting the person directly or by contacting a housing counselor from the list enclosed with the notice, request a meeting with the person designated under subdivision (c) to attempt to work out a modification of the mortgage loan to avoid foreclosure.

(e) That if the borrower requests a meeting with the person designated under subdivision (c), foreclosure proceedings will not be commenced until 90 days after the date the notice is mailed to the borrower.

(f) That if the borrower and the person designated under subdivision (c) reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement.

(g) That if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under section 3205c(1) and foreclosure under this chapter is not allowed under section 3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

(h) That enclosed with the notice is a list of housing counselors prepared by the Michigan state housing development authority and that the borrower may request a housing counselor from the list to attend any meetings with a person designated under subdivision (c).

(i) That the borrower has the right to contact an attorney, and the telephone numbers of the state bar of Michigan's lawyer referral service and of a local legal aid office serving the area in which the property is situated.

(j) The number of days in the redemption period that will be available to the borrower if the property is eventually sold at a foreclosure sale under this chapter, unless the property is abandoned and section 3241 or 3241a applies.

(k) That, under section 3278, if the property is sold at a foreclosure sale under this chapter, the borrower will be held responsible to the person who buys the property

12

at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

31. As noted above, not one of the more than fifteen letters that Ocwen sent to Third-Party Plaintiff between June and October of 2012 contained all of the information described in MCL 600.3205a. In fact, all of the letters taken together do not even contain all of the information described in MCL 600.3205a.

32. The July 6, 2012 letter from Ocwen (**Exhibit 10**), informing Third-Party Plaintiff that he was in arrears, in default and that he owed $19,898.12 and that failure to bring his account current could result in Ocwen's election to "exercise [its] right to foreclose," was the most detailed letter that Third-Party Plaintiff received. It did not provide the full amount due on the mortgage loan, only the arrearage. It provided "Important Information for Customers in Washington," listing statewide foreclosure hotlines available to them and two further paragraphs that one could reasonably infer concerned only borrowers from the state of Washington, one that a HUD counseling agency might provide help and another in larger, bold type that the borrower's "failure to contact a housing counselor or attorney may result in [the borrower's] losing certain opportunities, such as meeting with your lender or participating in mediation in front of a neutral third party." Michigan law does not provide for "mediation in front of a neutral third party."

33. The information in the July 6, 2012, letter (**Exhibit 10**) does not meet the very detailed requirements of MCL 600.3205a set forth in paragraph 29 above.

34. There is no recitation of the names, addresses, and telephone numbers of, or a designation of, the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer as the person to contact *and* that has the authority to make agreements under sections 3205b and 3205c. MCL 600.3205a(1)(b) and (c). Instead, Third-

13

Party Plaintiff was informed of the name of his "relationship manager," who would be his "designated representative for resolution inquiries and submission of documents" – *not* someone who had the authority to make agreements.

35.    There is no statement that within 30 days after the notice is sent, the borrower may, either by contacting the person directly or by contacting a housing counselor from the list enclosed with the notice, request a meeting with the person designated under subdivision (c) to attempt to work out a modification of the mortgage loan to avoid foreclosure.   MCL 600.3205a(1)(d).  The only time period mentioned was August 6th, the date by which Third-Party Plaintiff should send in his payment.  And no list of housing counselors was included in the letter.

36.    There is no statement that if the borrower requests a meeting with the person designated under subdivision (c), foreclosure proceedings will not be commenced until 90 days after the date the notice is mailed to the borrower.  MCL 600.3205a(1)(e).

37.    There is no statement that if the borrower and the person designated under subdivision (c) reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement.  MCL 600.3205a(1)(f).

38.    There is no statement that if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under section 3205c(1) and foreclosure by advertisement was not allowed under section 3205c(7), the foreclosure of the mortgage would proceed before a judge instead of by advertisement.  MCL 600.3205a(1)(g).

39.    There is no statement that enclosed with the notice is a list of housing counselors prepared by the Michigan state housing development authority or that the borrower may request

a housing counselor from the list to attend any meetings with a person designated under subdivision (c), nor is there any such enclosure. MCL 600.3205a(1)(h). Instead, information is given concerning help for customers in the state of Washington.

40.     There is no statement that the borrower has the right to contact an attorney, or the telephone numbers of the state bar of Michigan's lawyer referral service or of a local legal aid office serving the area in which the property is situated. MCL 600.3205a(1)(i). Instead, again, information is given concerning help for customers in the state of Washington.

41.     There is no statement of the number of days in the redemption period that will be available to the borrower if the property is eventually sold at a foreclosure sale. MCL 600.3205a(1)(j).

42.     There is no statement that if the property is sold at a foreclosure sale by advertisement, the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period. MCL 600.3205a(1)(k).

43.     Not only did none of the correspondence from Ocwen contain any meaningful portion of the requisite information, the information that the correspondence *did* contain was egregiously misleading.   Third-Party Plaintiff was repeatedly told that failure to return application packages by certain dates "may result in delay of the application process," rather than what actually occurred – that, apparently regardless of what documents Third-Party Plaintiff did or did not return, Ocwen was preparing to, and did, sell Third-Party Plaintiff's home at a sheriff's sale.

44.     MCL 600.3204(4)(g) also provides that a party shall not commence proceedings for a foreclosure by advertisement if "[c]alculations under section 3205c(1) show that the

15

mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7)."

45.   MCL 600.3205(c)(3) states that if the mortgage loan has been sold to a government-sponsored enterprise (like Freddie Mac in the present case), the standards for a loan modification under the Michigan statute that must be followed by the servicer are the modification guidelines dictated by the governmental entity.  Freddie Mac backed loans are subject to the HAMP guidelines, which provide that the payments should be set at 31% of gross income including principal and interest and property taxes and insurance.

46.   Thirty-one per cent of Defendants' gross income is $2,015.00.  The property sold at sheriff's sale for $395,987.24.  That amount amortized according to HAMP guidelines, *i.e.*, over 40 years at 2% interest, would result in a principal and interest payment of $1,199.15, plus approximately $800 more for taxes and insurance, resulting in a monthly payment of $1,999.15, which is under the 31% HAMP threshold.  Thus, Third-Party Plaintiff qualifies for a loan modification under HAMP.

47.   MCL 600.3205c(5)(a) requires that a lender send borrowers a copy of their calculations relative to their eligibility for a loan modification.  Third-Party Plaintiff was never sent a copy of the calculations relative to his modification pursuant to MCL 600.3205c(5)(a).

WHEREFORE, Third-Party Plaintiff respectfully requests that this honorable Court issue an order providing that:

1.   The illegal Sheriff's sale occurring on October 19, 2012, be declared void; and

2.   The eviction action stemming from this illegal foreclosure be dismissed.

16

## JURY DEMAND

Third-Party Plaintiff demands a trial by jury.

Respectfully submitted,

JEROME D. GOLDBERG, PLLC

Jerome D. Goldberg (P61678)
Attorneys for Defendant
2921 East Jefferson, Suite 205
Detroit, MI 48207
Phone (313) 393-6001

and

Kathy H. Murphy (P51422)
Attorney for Defendant and Third-Party
Plaintiff
P.O. Box 51164
Livonia, MI 48150
Phone (734) 578-1887

DATED: June 6, 2013

## INDEX OF EXHIBITS

Exhibit 1        HAMP Regulations

Exhibit 2        Opinion of Judge Aquilina

Exhibit 3        Opinion of Judge Miller

Exhibit 4        Mortgage

Exhibit 5        Corporation Assignment of Mortgage

Exhibit 6        March 26, 2012 Letter from Bank of America

Exhibit 7        May 9, 2012 Letter from Bank of America

Exhibit 8        May 24, 2012 Letter from Bank of America

Exhibit 9        May 25, 2012 Letter from Bank of America

Exhibit 10       June 12, 2012 Letter from Ocwen

Exhibit 11       July 6, 2012 Letter from Ocwen

Exhibit 12       July/August Letters from Ocwen

Exhibit 13       September 19, 2012 Letter from Ocwen

Exhibit 14       September 20, 2012 Letter from Ocwen

Exhibit 15       Proof of Publication of Foreclosure Notice

Exhibit 16       September 25, 2012 Letter from Ocwen

Exhibit 17       October 9, 2012 Letter from Ocwen

Exhibit 18       October 11, 2012 Letter from Ocwen

Exhibit 19       October 11, 2012 Letter from Ocwen

Exhibit 20       October 25, 2012 Letter from Ocwen

Exhibit 21       Sheriff's Deed

# EXHIBIT 1

*Announcement 09-05 R*

*April 21, 2009*
(*Reposted May 15, 2009*)

*Amends these Guides: Servicing*

## Reissuance of the Introduction of the Home Affordable Modification Program, HomeSaver Forbearance™, and New Workout Hierarchy

### Introduction

This Announcement (09-05R) is a reissuance of Announcement 09-05, which was originally issued on March 4, 2009. This Announcement provides additional policy clarification and instruction and supersedes Announcement 09-05 in its entirety. Policy clarifications and new instructions that are incorporated into this Announcement are identified by bold type. (Other minor editorial changes are included in this document but not identified in bold.) *Reposted with "HAMP" in lieu of "HMP".*

### Background

On February 18, 2009, President Obama announced the Homeowner Affordability and Stability Plan to help up to 7 to 9 million families restructure or refinance their mortgage loans to avoid foreclosure. As part of this plan, the Treasury Department (Treasury) announced a national modification program aimed at helping 3 to 4 million at-risk homeowners – both those who are in default and those who are at imminent risk of default -- by reducing monthly payments to sustainable levels. Treasury issued uniform guidance for loan modifications across the mortgage industry in Supplemental Directive 09-01 on April 6, 2009. This Announcement provides guidance to Fannie Mae servicers for adoption and implementation of the Home Affordable Modification Program (HAMP) for Fannie Mae loans.

Under the HAMP, servicers will use a uniform loan modification process to provide eligible borrowers with sustainable monthly payments. The HAMP implementation guidelines set forth in this Announcement apply to all eligible one- to four-unit owner-occupied properties securing Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae. The HAMP will replace the Streamlined Modification Program introduced in Announcement 08-33 and the Early Workout™ program announced in Announcement 08-31. The HAMP will expire on December 31, 2012.

All Fannie Mae-approved servicers must participate in the program for all eligible Fannie Mae portfolio mortgage loans and MBS pool mortgage loans guaranteed by Fannie Mae.

Ex. 2

As an alternative, the servicer may require a borrower to submit the required documentation to verify the borrower's eligibility and income prior to preparing a Trial Period Plan. Upon receipt of the documentation and determination of the borrower's eligibility, the servicer may prepare and send to the borrower a firm offer solicitation indicating the borrower is eligible for the HAMP using the SIGTARP Fraud Notice, the HAMP Trial Period Plan Cover Letter (Step One – Income Verified), and the Trial Period Plan.

A borrower is eligible for the HAMP if the verified income documentation confirms that the monthly mortgage payment ratio prior to the modification is greater than 31 percent. For purposes of this Announcement, "monthly mortgage payment ratio" is the ratio of the borrower's current monthly mortgage payment to the borrower's monthly gross income (or the borrowers' combined monthly gross income in the case of co-borrowers).

### Determining the Monthly Mortgage Payment

The "monthly mortgage payment" includes the monthly payment of principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's association fees, as applicable (including any escrow payment shortage amounts subject to the 60-month repayment plan). When determining a borrower's monthly mortgage payment ratio, servicers must adjust the borrower's current mortgage payment to include, as applicable, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's association fees if these expenses are not already included in the borrower's payment. The monthly mortgage payment must not include mortgage insurance premium payments or payments due to holders of subordinate liens.

### Determining Gross Monthly Income

The borrower's "monthly gross income" is the borrower's income amount before any payroll deductions and includes wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, other compensation for personal services, Social Security payments, including Social Security received by adults on behalf of minors or by minors intended for their own support, and monthly income from annuities, insurance polices, retirement funds, pensions, disability or death benefits, unemployment benefits, rental income and other income. If only net income is available, the servicer must multiply the net income amount by 1.25 to estimate the monthly gross income.

Servicers should include non-borrower household income in monthly gross income if it is voluntarily provided by the borrower and if there is documentary evidence that the income has been, and can reasonably continue to be, relied upon to support the mortgage payment. All non-borrower household income included in monthly gross income must be documented and verified by the servicer using the same standards for verifying a borrower's income. (An example of non-borrower income is boarder income.)

If the verified income evidenced by the borrower's documentation exceeds the initial income information used by the servicer to solicit or place the borrower in the trial period

HAMP and specific justification with supporting details if the request for modification under the HAMP was denied. Records must also be retained to document the reason(s) that a Trial Period Plan is not finalized. If a borrower under an HAMP modification loses good standing, the servicer must retain documentation of its consideration of the borrower for other foreclosure prevention alternatives. Servicers must retain HAMP documentation as prescribed in *Servicing Guide*, Part I, Section 405: Record Retention.

## Temporary Suspension of Foreclosure Proceedings

*Servicing Guide*, Part VIII, Section 105.01: Temporary Suspension of Proceedings

To ensure that a borrower currently at risk of foreclosure has the opportunity to apply for the HAMP, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in the HAMP has been made. Servicers must use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility for the HAMP, including in-person contacts at the servicer's discretion. Servicers must not conduct foreclosure sales on mortgage loans previously referred to foreclosure or refer new mortgage loans to foreclosure during the 30-day period that the borrower has to submit documents evidencing an intent to accept the Trial Period Plan offer. Except as noted herein, any foreclosure sale will be suspended for the duration of the Trial Period Plan, including any period of time between the borrower's execution of the Trial Period Plan and the Trial Period Plan effective date. However, borrowers in Georgia, Hawaii, Missouri, and Virginia will be considered to have failed the trial period if they are not current under the terms of the Trial Period Plan as of the date that the foreclosure sale is scheduled. Accordingly, servicers of HAMP loans secured by properties in these states must proceed with the foreclosure sale if the borrower has not made the trial period payments required to be made through the end of the month preceding the month in which the foreclosure sale is scheduled to occur.

## Mortgage Insurer Approval

Fannie Mae has obtained blanket delegations of authority from most mortgage insurers so that servicers can more efficiently process HAMP modifications without having to obtain mortgage insurer approval on individual mortgage loans. A list of the mortgage insurers from which Fannie Mae has received a delegated authority agreement can be found on _____. If applicable, servicers must continue to obtain mortgage insurer approval on a case-by-case basis from any mortgage insurer for which we have not yet received a delegated authority agreement. Servicers should consult their mortgage insurance providers for specific processes related to the reporting of modified terms, payment of premiums, payment of claims, and other operational matters in connection with mortgage loans modified under the HAMP.

## Executing the HAMP Documents

Servicers must use a two-step process for HAMP modifications. Step 1 involves providing a document outlining the terms of the forbearance (the Trial Period Plan), and step 2 involves

---

# EXHIBIT 2

# STATE OF MICHIGAN

## IN THE 30TH CIRCUIT COURT FOR THE COUNTY OF INGHAM

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

        Plaintiff-Appellee,

v

MICHAEL R. KELLEY
and KATHRYN M. KELLEY,

        Defendants-Appellants.

**OPINION AND ORDER**

HON. ROSEMARIE E. AQUILINA

Docket No: 12-000885-AV

At a session of said Court held in the City of
Lansing, County of Ingham, State of Michigan,
this 12th day of February, 2013

PRESENT: The Honorable Rosemarie E. Aquilina
30th Judicial Circuit Court Judge

This matter comes before the Court on Michael and Kathryn Kelly's ("Defendants") appeal from a District Court decision granting possession of property to the Federal Home Loan Mortgage Corporation ("Plaintiff"). This Honorable Court having reviewed all briefs, motions, supporting documents, and being fully appraised of the issues, states the following:

## BACKGROUND FACTS

On March 21, 2003, Defendants executed a mortgage with First National Bank of America. The mortgage was recorded on April 24, 2003 with the Ingham County Register of Deeds.

First National Bank assigned the mortgage to ABN AMRO Mortgage Group, Inc. ("ABN AMRO") on March 26, 2003 and recorded the assignment with the Ingham County Register of

Deeds on November 25, 2003.  ABN AMRO later merged into CitiMortgage, Inc., maintaining the name CitiMortgage, Inc., but remained the mortgagee of record through the foreclosure sale without assignment and notice from ANB AMRO to CitiMortgage.

As a result of Defendants failure to comply with the terms of the mortgage, the loan fell into default.  A foreclosure sale was ultimately held on October 20, 2011 with Plaintiff, as the successful purchaser.  A Sheriff's Deed on mortgage sale was recorded with the Ingham County Register of Deeds on October 27, 2011 and given identification number 2011- 038810.

Pursuant to MCL 600.3240(7), Defendants had six months during which they could have tendered redemption.  They failed to do so.

## PROCEDURAL HISTORY

Several questions were brought in District Court.  First, was Plaintiff a Federal actor subject to 5th Amendment limitations on its ability to foreclose by advertisement?  The District Court answered this question in the negative and Defendants appeal this decision.  Second, did Plaintiff fail to comply with Michigan Foreclosure Law, MCL 600.3204(3), requiring a record chain of title?  The District Court answered this question in the negative and Defendants appeal this decision.  Third, did Plaintiff comply with Michigan Foreclosure Law, MCL 600.3212, requiring identification of the foreclosing assignee?  The District Court answered this question in the positive and Defendants appeal this decision.  Lastly, did Plaintiff comply with Michigan Foreclosure Law, MCL 600.3205a(1), regarding pre-foreclosure modification?  The District Court answered this question in the positive and Defendants appeal this decision.

## DEFENDANTS' ARGUMENT

I.  Plaintiff is a Federal Actor subject to 5th Amendment Limitations on its ability to Foreclose by Advertisement.

Defendants argue Plaintiff admitted to acting as the Federal Government in several instances. Throughout the month of January 2011, Plaintiff filed 13 Covenant Deeds in the Ingham County Register of Deeds. Each was claimed to be exempt by Plaintiff under MCL 207.526(h)(i) and MCL 207.505(h)(i), both of which are exceptions from State and County transfer taxes; reserved when the transferor is the United States or a political subdivision thereof. A second set of deeds, Sheriff's Deeds by which Plaintiff took ownership of the homes during the same period, also claims this same exception under MCL 207.505(h)(ii).

Furthermore, Defendants argue Plaintiff is a Federal Entity as a matter of law. Defendants cite *Lebron v National Railroad Passenger Corporation*, 513 US 374; 115 SCt 961 (1995) as the case establishing the test for determining whether a private entity is a Federal actor. Under *Lebron*, a company is a Federal actor where the Government creates the corporation by special law, for furtherance of Government objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation. Defendants argue the level of control the Government has on Freddie Mac is sufficient to declare it a Federal actor.

In 2008, Congress passed the Economic Recovery Act of 2008 ("ERA") and the Federal Housing Finance Agency ("FHFA"). Under this Act, the FHFA, a federal agency, became conservator of both Plaintiff and Fannie Mae. The FHFA is tasked with reorganizing, rehabilitating, and winding up their affairs with no specific end date of the conservatorship and no automatic provisions will return Plaintiff to its original status as a private entity.

Defendants also claim the control exerted by the Government on Plaintiff far exceeds the control of Amtrak discussed in *Lebron*. In *Lebron*, Amtrak was created by special statute, explicitly for the furtherance of Federal Government goals, and the President appointed 6 of the 8 directors – 75%. Amtrak was found to be a Government entity. Along with its control, the

3

Federal Government acted as a policymaker at Amtrak and no provision existed that would automatically terminate control upon a termination of a temporary financial interest. *Id.* at 399. Here, the FHFA has authority over 100% of the stock, all officers of the company, and every director. The Government's position in this case is strikingly similar. Its control over Plaintiff not only matches the control over Amtrak, but exceeds it.

II.  **Plaintiff did not comply with Michigan Foreclosure Law, MCL 600.3204(3), requiring a Record Chain of Title.**

Defendants argue the District Court's decision which held Plaintiff complied with MCL 600.3204(3) is incorrect, because it misstates the argument made by Defendants. Defendants do not argue a second assignment took place between ABN AMRO to CitiMortgage and it was unrecorded. Defendants argue because CitiMortgage is not the original mortgagee, an assignment was required subsequent to the merger from ABN AMRO to CitiMortgage. That assignment never took place and was unrecorded in violation of MCL 600.3204(3).

The argument is based on statutory interpretation of MCL 600.3204(3) and *Winiemko v GE Capital Mtg Serv Inc* No. 177827, 1997 WL 33354482 (Mich Ct App Jan 17, 1997). At the time *Winiemko* was decided, MCL 600.3204(3) stated when an assignment was made it must be recorded. However, today the statute provides, in part:

> If the party foreclosing the mortgage is not the original mortgagee, a record chain of title shall exist prior to the date of sale...evidencing assignment of the mortgage to the party foreclosing the mortgage. [MCL 600.3204(3)]

Defendants claim this language requires an assignment any time a new party takes hold of the mortgage, even if it is the same company that has merged into a new entity.

III.  **Plaintiff did not comply with Michigan Foreclosure Law MCL 600.3212, requiring Identification of the Foreclosing Assignee.**

4

Defendants state, pursuant to MCL 600.3212(a), every notice of foreclosure by advertisement must include the name of the foreclosing assignee. The District Court decided this provision was not violated because CitiMortgage is a post-merger name, which includes ABN AMRO, and ABN AMRO was the last assignee required to be named on the notice.

Defendants reiterate ABN AMRO did not survive the merger and the merger was not equivalent to a name change, as the District Court has surmised. At the very least, Defendants argue this creates an issue of material fact requiring discovery to determine the identity of who retained Trott & Trott, P.C., to perform the foreclosure. Defendants state it is CitiMortgage, but the company is not listed anywhere, as the statute requires.

IV.   **Plaintiff did not comply with Michigan Foreclosure Law, MCL 600.3205a(1), regarding Pre-foreclosure Modification.**

Lastly, Defendants argue the foreclosing party must serve written notice of right relating to a meeting to discuss modification of the mortgage, pursuant to MCL 600.3205(a)(1). Two problems arise. First, if Plaintiff sent notice, it infers Plaintiff was the foreclosing party and therefore is in violation of the notice requirement above. Second, if Plaintiff is not the foreclosing party, but notice was sent on its behalf, then the actual foreclosing party did not send notice in violation of MCL 600.3205(a)(1), producing a void sale and Sheriff's deed.

Therefore, if the foreclosing party is unclear, and Defendants relied on the notice to meet and modify their loan, which was eventually denied, the foreclosing entity could not have had authority to settle as required by MCL 600.3205(a)(1)(c) - they would not know whom to seek authority from. Subsequently, either the sale is invalid because the foreclosing party did not provide the necessary notice and negotiator authorized to settle under 3205(a), or the foreclosing party was Plaintiff, who was not assigned the mortgage as required before the sale.

## PLAINTIFF'S ARGUMENT

I.   District Court correctly applied *Lebron* to hold Freddie Mac is not a Government Actor for Constitutional Purposes.

Under *Lebron*, a private corporation is deemed a government actor for purposes of a constitutional challenge when Congress created the corporation by special law, for the furtherance of government objectives, and retained for itself permanent authority to appoint a majority of the directors of a corporation. *Lebron supra*, at 400. The District Court recognized the conservatorship of Freddie Mac by the FHFA does not establish permanent control under *Lebron*.

*Herron v Fannie Mae*, 857 F Supp 2d 87, (DDC 2012) agrees, stating when the FHFA serves as conservator, it steps into the shoes of the private corporation, Fannie Mae. Therefore, Plaintiff argues, the FHFA directs Freddie Mac as the successor to that corporation's private "rights, titles, powers, and privileges"- not in the Government's capacity. However, these cases are not recorded, and therefore not binding, but persuasive.

In addition, Plaintiff states even if the conservatorship did establish Government control over Freddie Mac, any control would not be "permanent" as *Lebron* requires. The FHFA was empowered to act as conservator or receiver of Freddie Mac for purposes of "reorganizing, rehabilitating, and winding up its affairs." 12 USC 4617. The enabling statute expressly allows the FHFA to have temporary, complete control over Fannie Mae, but not permanent.

Lastly, as to tax exemptions on transfers, Plaintiff states Government-created corporations are often held to be tax immune, but courts have also frequently found them not to be subject to constitutional treatment as government actors, citing *Hall v Am Nat'l Red Cross*, 86 F3d 919, 922 (CA 9 1996). Also, its enabling statute allows for tax exemptions. *See* 12 USC 1452.

6

## II. A Foreclosure is Not a Government Action.

Pursuant to *Cramer v Metropolitan Sav And Loan Ass'n*, 401 Mich 252; 257 NW2d 20, (1977), the Michigan Supreme Court adopted the Sixth Circuit's analysis of the Michigan Foreclosure by Advertisement Statute adopted by the Michigan Court of Appeals in *National Airport Corp v Wayne Bank*, 73 Mich App 572; 252 NW2d 519 (1977). These cases held the power of sale is incident of the private right to contract. Therefore, a mortgagee who exercises a foreclosure option is relying on a contract remedy, and not on a right created by statute. The State cannot be said to be significantly involved, through "encouragement," in the challenged conduct, and a due process question is consequently not presented. *Cramer, supra,* at 259.

## III. Defendants are Time-Barred from Raising Certain Arguments.

Plaintiff contends, since the foreclosure proceedings had been initiated, the redemption period had passed, and the sheriff's sale has occurred, Defendants no longer have rights in and title to the property and therefore, are barred from bringing certain defenses. Plaintiff cites *Awad v Gen Motors Acceptance Corp,* unpublished opinion per curiam of the Court of Appeals, issued [April, 24, 2012] (Docket No 302692), *Overton v Mortgage Elec Registration Sys*, No 284950, 2009 WL 1507342 (Mich Ct App My 28, 2009); and *Sweet Air Investment, Inc v Kenny*, 275 Mich App 492, 497; 739 NW2d 656 (2007) as stating that once the redemption period has ended, and Defendants made no effort and took no action to redeem, they cannot show prejudice and a claim of inadequate notice is without merit.

## IV. The Foreclosure Process Complied with Michigan Statute.

Plaintiff focuses primarily on Defendants' contention that an assignment is required between ABN AMRO and CitiMortgage after a merger where ABN AMRO became CitiMortgage. Plaintiff cites several unpublished cases from 2012 dealing with the exact same

merger issue and the exact same company. The cases of *Sesi v Fed Home Loan Mtg Corp*, 2012 US Dist LEXIS 24348 (ED Mich Feb. 27, 2012) and *Meyer v CitiMortgage Inc*, 2012 US LEXIS 19548 (Feb. 16, 2012) state that it was not necessary to assign Defendants' mortgage to itself because, under New York Law, the merger of ABN AMRO to CitiMortgage allowed CitiMortgage to:

> Possess all the rights, privileges, immunities, powers and purposes of each of the constituent corporations [and] all the property, real and personal, including subscriptions to shares, causes of action and every other asset of each of the constituent entities shall vest in such surviving consolidated corporation without further act or deed. [NY Bus Corp Law Sec 906(b)(1)-(2)]

Because no assignment was necessary between ABN AMRO and CitiMortgage, Plaintiff asserts the notice given to Defendants was not faulty, and even if there was an error, pursuant to *Jackson Inv v Pittsfield Product Inc, Corp*, 162 Mich App 750; 413 NW2d 99 (1987) the error would only render the foreclosure voidable and not void. There is no evidence showing Defendants would have been any better off had the correct information been on the notice. Defendants knew about the foreclosure sale, were unable to, and did not take any action to prevent the sale, and took no action during the redemption period following the sale. Therefore, Plaintiff maintains no section of the foreclosure statute was violated.

## CONCLUSION OF LAW

This Court reverses the District Court's decision on two grounds. First, this Court finds Plaintiff, as it currently conducts business, a government entity requiring 5th Amendment Due Process notice and hearing for actions depriving individuals of life, liberty, or property. In addition, the Court finds that pursuant to MCL 600.3204(3), Michigan is a notice state requiring assignment of the mortgage from ABN AMRO to CitiMortgage in the occurrence of a merger between the companies.

8

I.    **Freddie Mac is a Government Entity Requiring 5th Amendment Due Process Procedure.**

Aside from Plaintiff filing tax exemptions as the United States under MCL 207.526(h)(i) and 505 (h)(i), rather than under its own enabling statute, under *Lebron*, a company is a Federal actor where the Government creates the corporation by special law, for furtherance of Government objectives. It retains for itself permanent authority to appoint a majority of the directors of that corporation. The only issue here is whether the Federal Government retains permanent control over Plaintiff. This Court holds that it does. In 2008, the Federal Government passed the ERA, creating the Federal Home Loan Mortgage Corporation. Pursuant to 12 USC 4617, the FHFA is conservator of both Plaintiff and Fannie Mae with duties to reorganize, rehabilitate, and wind up their affairs. In regard to permanence, there is no determined end date in which Plaintiff will become a private entity, nor is there an automatic provision that will revert Plaintiff to a private entity. The FHFA controls every aspect of Plaintiff's business and its Board of Directors is appointed by and answers to the Director of the FHFA.

Though conservatorship is described as a temporary status of a company, the procedures and provisions in place in this case make the conservatorship, in all practicality, permanent. Because Plaintiff is a government entity, foreclosure by advertisement is prohibited and constitutional due process procedure must be applied.

II.   **CitiMortgage Violated MCL 600.3204(3) when it did not Retain Chain of Title on Defendants' mortgage as the new foreclosing party.**

This Court respectfully disagrees with the Eastern District's decisions in *Meyer* and *Sesi* and interprets MCL 600.3204(3) to require an assignment of the mortgage upon a merger between companies where the mortgage holder ceases to exist and the surviving company, or a new company, takes its place.

Michigan is a notice state, and under Plaintiff's construction of the law, individuals with little experience in the realm of mergers and acquisitions could have their mortgages sold around to several companies, each making an assignment record, but if one decides to merge and completely change its name, no assignment record would be needed. Hypothetically, a company could merge several times, changing its name every time, without requiring a chain of title notice. This would leave the individual searching for its mortgage holder if something were to happen, as in this case.

In order for individuals to be able to remedy problems that arise in their mortgage, the legislature amended MCL 600.3204(3) from applying if assignments needed to be made, to requiring assignments in every situation where the foreclosing entity is not the original mortgagee. In this case, ABN AMRO ceased to exist when it merged with CitiMortgage, Inc. Because of this, CitiMortgage, Inc. is not synonymous with ABN AMRO, but is an entirely different entity that is required to be assigned the mortgage under MCL 600.3204(3).

Because of this failure to assign the mortgage from ABN AMRO to CitiMortgage, Inc., Plaintiff violated the notice requirements of MCL 600.3212(a) requiring notice of the foreclosing assignee. In this case, the assignee is CitiMortgage, Inc. not ANB AMRO.

**THEREFORE, IT IS ORDERED** that the District Court's decision granting Plaintiff possession be reversed and Plaintiff's complaint be dismissed. In compliance with MCR 2.608(A)(3), this Court finds this decision as the last pending claim and closes this case.

**IT IS SO ORDERED.**

Hon. Rosemarie E. Aquilina (P37670)
Circuit Court Judge

10

## PROOF OF SERVICE

I hereby certify I served a copy of the above Order upon Plaintiff and upon Defendants by placing the Order in sealed envelopes addressed to the attorney of each party and deposited them for mailing with the United States Mail at Lansing, Michigan, on February 12, 2013.

Morgan E. Cole (P75166)
Law Clerk

11

# EXHIBIT 3

STATE OF MICHIGAN

MACOMB COUNTY CIRCUIT COURT

DEUTSCHE BANK NATIONAL
TRUST CO., as Trustee for
HASCO 2007-NCI,

        Plaintiff/
        Appellee,

vs.

                                  Case No. 2009-2627-AV

SUSAN HASS and ROBERT HASS,

        Defendants/
        Appellants.

_____/

## OPINION AND ORDER

    This matter is before the Court on an appeal from the May 8, 2009 Possession Judgment that was entered in the 41-B District Court.

## I. Background & Procedural History

    On November 29, 2006, Susan and Robert Hass ("Appellants") purchased property commonly known as 19844 Blackfoot Drive, Clinton Township, Michigan 48038. They obtained a variable-rate loan for $363,317.68, at the annual percentage rate of 11.349%, from Home123 Corporation ("Home123"). Mortgage Electronic Registration Systems ("MERS") held the security as nominee for Home123 and Home123's successors and assigns. Thereafter, on November 7, 2007, MERS assigned all of its rights, title and interest in the subject mortgage to Deutsche Bank National Trust Company, as Trustee for HASCO 2007-NCI ("Appellee").

    During Spring 2008, Appellants fell behind on their mortgage payments after they both lost their jobs. They contacted American Servicing Company ("American"), the alleged servicer

1

of their loan, regarding a possible mortgage modification. They proposed that their arrearage be placed at the end of their loan and that their $2,531.25 monthly payment be reduced by $1,000.00 for 12 months, or until their income increased, whichever occurred first. However, American rejected their modification proposal and instead demanded immediate and full payment of the arrearage without any reductions.

Appellee then commenced foreclosure proceedings against Appellants, with Appellee purchasing the subject property at the July 18, 2008 Sheriff's Sale for $201,000.00. On February 21, 2009, Appellee filed a Complaint for Possession and Termination of Tenancy against Appellants in 41-B District Court. Appellants denied that they were unlawfully holding over and unlawfully in possession. Among other things, they argued that Appellee's refusal to implement a loan modification or workout plan violated recently enacted federal statutes/directives requiring Appellee to work with them to modify their mortgage loan and prevent foreclosure. They further maintained that Appellee's and American's successor/parent company, Wells Fargo, signed an agreement with the federal government requiring it to provide mortgage relief to individuals in their situation and that said contractual obligation extended to Appellee and American by virtue of their relationship to Wells Fargo.

At the conclusion of the May 8, 2009 hearing on Appellee's Motion for Possession, the District Court concluded that the federal provisions were not applicable inasmuch as the Sheriff's Sale had occurred prior to their enactment. [Tr. at 9-10]. Accordingly, the District Court orally ruled in favor of Appellee. [Tr. at 10]. The corresponding Possession Judgment was entered on the same date. Appellants' motion for reconsideration was subsequently denied pursuant to a May 29, 2009 Order that was entered after oral argument was held thereon.

2

## II. Outstanding Issues

Appellants presently contend that Appellee is merely a trustee for HASCO 2007-NCI and that Wells Fargo is the actual owner and/or servicer of HASCO 2007-NCI. They further assert that Appellee and Wells Fargo are essentially the same. Alternatively, they maintain that there is a genuine issue of material fact regarding such relationship. In support of their position, they attached a copy of an Internet search regarding HASCO Trust 2007-HE2, which sets forth information about the trust on the United States Securities and Exchange Commission Form 10-K and which designates Wells Fargo as the Master Servicer, Custodian, and Securities Administrator. [Appellants' Exhibit 5]. They also attached a copy of the Assignment of Mortgage from MERS to Appellee [Appellants' Exhibit 4], a copy of a white pages search on the Internet [Appellants' Exhibit 5], and a copy of the Sheriff's Deed on Mortgage Sale [Appellants' Exhibit 7], which show that Appellee and Wells Fargo have the same address. At the same time, they also assert that American, the entity which denied their request for a loan modification, is also part of the Wells Fargo corporate structure.

In response, Appellee denies that Appellants have established a relationship between itself and Wells Fargo. Appellee further argues that if such were the circumstances, then Wells Fargo should have been made a party to the action. Appellee agrees with the District Court that Appellants are not entitled to relief under the pertinent federal statutes/directives since they were enacted/promulgated subsequent to the Sheriff's Sale.

After careful consideration, the Court is persuaded that there are numerous issues of material fact, including, but not limited to, whether Wells Fargo is the actual owner/servicer of the loan, the nature and extent of the relationship, if any, between Appellee and Wells Fargo, the nature and extent of the relationship, if any, between Wells Fargo and American, and whether

Wells Fargo should have been made a party to the action. If it is ultimately found that Wells Fargo is the servicer of the subject loan, then it is bound by the terms of its written agreement with the federal government, as will be addressed below. If Appellee and/or American are found to constitute part of the Wells Fargo "family," the District Court must decide whether Wells Fargo's agreement with the federal government is likewise binding on them.

Accordingly, the District Court's decision shall be reversed and the matter shall be remanded for a determination of said issues. Of course, the District Court shall also address any and all other outstanding issues that are necessary to a resolution of this action.

## III. Wells Fargo's Contract

On April 13, 2009, Wells Fargo, as Servicer, signed a Commitment to Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable Modification Program Under the Emergency Economic Stabilization Act of 2008 ("the Contract"). The other party to the Contract was the Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation and financial agent of the United States. Pursuant to the Contract, Wells Fargo agreed to be bound by the terms and conditions therein relative to mortgage loans, particularly with respect to loan modifications and other foreclosure prevention services. Pursuant to Page 3 of the Contract, Wells Fargo was to receive $2,873,000,000 in exchange for its participation in the subject program.

On Page 2, Wells Fargo specifically agreed to comply with all program guidelines and procedures established by the Department of Treasury, including:

> ...any supplemental documentation, instructions, bulletins, letters, directives, or other communications, including, but not limited to, business continuity requirements, compliance requirements, performance requirements and related remedies, issued by the Treasury, Fannie Mae, or Freddie Mac in order to change, or further describe or clarify the scope of, the rights and duties of the Participating Servicers ...

4

Also on Page 2, Wells Fargo contracted to:

...use reasonable efforts to remove all prohibitions or impediments to its authority, and use reasonable efforts to obtain all third party consents and waivers that are required, by contract or law, in order to effectuate any modification of a mortgage loan under the Program.

Moreover, Page 10 provided that "[t]he Agreement shall be governed by and construed under Federal law and not the law of any state or locality..."[1] Since federal and Michigan law do not differ as to the rules of contract interpretation, the Court finds it useful to look to state law. *Textile Workers Union of America v Lincoln Mills of Alabama*, 353 US 448, 457; 77 S Ct 912; 1 Led 2d 972 (1957). Pursuant to Michigan law, the Contract must be enforced as written inasmuch as Wells Fargo's obligations thereunder are clear and unambiguous. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). That is, Wells Fargo was obligated to offer mortgage payment assistance to individuals who were eligible under the subject federal program. As will be addressed below, Appellants met the eligibility requirements for such assistance.

If Wells Fargo is ultimately found to be the actual loan servicer, it therefore breached its contractual duty by failing to offer relief to Appellants pursuant to the prevailing federal authority. Similarly, if Appellee and/or American are ultimately determined to be bound by the contractual terms, they must also be found to have been in violation thereof for failing to offer Appellants a mortgage modification. In turn, a breach of contract by any of these entities means that foreclosure proceedings should never have been commenced and the Sheriff's Sale should not have been held.

---

[1] The Contract also provides that any disputes between Wells Fargo and the federal government shall be brought solely and exclusively in the federal courts located in the District of Columbia. The Court is not persuaded by Appellee's argument that the instant controversy should have been brought in federal court since the federal government, through its agency, Fannie Mae, is not a party.

5

## IV. Program Eligibility Requirements

At the outset, the Emergency Economic Stabilization Act of 2008[2] ("the Act") became effective on October 3, 2008. One of its stated purposes was to preserve home ownership. 12 USC 5201(2)(B). The Act provided that, in exercising its authority thereunder, the Treasury Department shall take into consideration "the need to help families keep their homes and to stabilize communities." 12 USC 5213(3).

Moreover, 12 USC 5219(a)(1) contained the following language:

...the Secretary shall implement a plan that seeks to maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages...to take advantage of...available programs to minimize foreclosures. In addition, the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

On February 18, 2009, the Obama Administration announced the Homeowner Affordability and Stability Plan, which was designed to assist approximately 7 to 9 million families restructure or refinance their mortgages so as to avoid foreclosure. [Appellants' Exhibit 13]. As part of this Plan, the Treasury Department announced a national mortgage modification program, which resulted in the March 4, 2009 issuance of uniform guidelines for mortgage modifications across the county. [Appellants' Exhibit 13].

On April 6, 2009, the Department of Treasury issued Supplemental Directive 09-01, which set forth additional guidelines to participating servicers relative to the adoption and implementation of the Home Affordable Modification Program ("HMP"). [Appellants' Exhibit 13]. Said Supplemental Directive delineated certain eligibility requirements for the HMP on Pages 2-3, including, but not limited to, the following:

- The mortgage loan is delinquent or default is reasonably

---

[2] This Act created the Troubled Asset Relief Program, commonly known as TARP. 12 USC 5202(8); 12 USC 5211(a)(1).

foreseeable; loans currently in foreclosure are eligible.

- The property securing the mortgage loan must not be vacant or condemned.

- A borrower in active litigation regarding the mortgage loan is eligible for the HMP.

It is noteworthy that all pertinent documentation, including supplemental directives, were made part of the Wells Fargo Contract pursuant to Page 10 thereof.

Once again, the Court deems it instructive to consult state law inasmuch as it is compatible with its federal counterpart on the matter of statutory construction. *Textile Workers Union of America, supra*. Under Michigan law, it is the Court's obligation to discern and give effect to the legislative intent as expressed in the statutory terms. *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). When reviewing a statute, the Court should assume that every word has a purpose and, as far as practicable, give effect to every clause and sentence. *Id.* Further, care should be taken so as to avoid a construction that would render any part of a statute surplusage or nugatory. *Id.* at 684. The rules of statutory construction apply to agency rules. *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993). This Court reviews the question of statutory interpretation *de novo*. *People v Krueger*, 466 Mich 50, 33; 643 NW2d 223 (2002).

With respect to the first eligibility requirement listed above, the Court is convinced that the District Court improperly concluded that the July 18, 2008 Sheriff's Sale was the cut-off date for the purpose of Appellants' eligibility to participate in the federal mortgage relief program. Indeed, such a conclusion is contrary to the clear Congressional intent to provide assistance to financially challenged homeowners with the ultimate goal of preserving their ownership status, as reflected in 12 USC 5201(2)(B) and 5213(3). *Pohutski, supra*. It is also in contravention of

the Obama Administration's intent to provide such relief.  [*See* Appellants' Exhibit 14, which contains a portion of the federal government website at www.financialstability.gov].

Appellee does not dispute the accuracy of the information contained in Appellants' Exhibit 15, which is a national survey of foreclosure practices. The survey reflects that Michigan has a shorter foreclosure process than most other states, but a longer redemption period.[3]  In reality, this means that Michigan borrowers still have a window of opportunity after the Sheriff's Sale within which to recover their property.[4]  Thus, finality is not necessarily achieved at the time of the Sheriff's Sale in this jurisdiction.

Neither the federal statutory provisions nor the subject directive singles out Michigan borrowers by holding them to a shorter eligibility period than their counterparts in other states.[5] Not only would it be patently unfair to establish a reduced eligibility period for Michigan residents, such a result would contravene the language on Page 1 of Supplemental Directive 09-01, which stated that "[u]nder the HMP, a servicer will use a uniform modification process to provide a borrower with sustainable monthly payments." [emphasis added].  To the extent that Michigan's foreclosure procedure may be in conflict with or poses an impediment to federal law, federal law preempts the field. *Gade v Nat'l Solid Wastes Mgt Ass'n*, 505 US 88, 98; 112 S Ct 2374; 120 L Ed 2d 73 (1992).  The Court opines that the federal Act's purpose, as addressed above, evidences a Congressional intent to implement a mortgage assistance program that is consistent throughout the country since it was designed to address the widespread financial hardship of homeowners during an historical economic downturn.

---

[3] According to the survey, many states do not even have a redemption period.
[4] This redemption period may be 30 days 1 year, depending on certain factors, such as the date the mortgage was executed and the type of property involved.  MCL 600.3240.
[5] On page 14 of the Supplemental Directive, for example, borrowers in Georgia, Hawaii, Missouri, and Virginia are singled out in terms of when they are deemed to have failed the trial period plan.

In any event, the Court must construe the quoted three factors under Supplementary Directive 09-01 as a whole. *Polutski, supra.* If the Sheriff's Sale were to be used as the eligibility cut-off date for the purpose of the first factor, such result would render the remaining two factors meaningless, contrary to well-established rules of statutory construction. *Id.* For example, Appellants have satisfied the second factor since their home is not vacant or condemned; indeed, it was reported that Appellants are, in good faith, depositing their monthly mortgage payments in escrow. Notwithstanding, such requirement would be reduced to mere surplusage under the District Court's holding since the Sheriff's Sale cut-off date would render it moot. Pursuant to the third factor, Appellants are not eliminated from participation merely because they were, and still are, engaged in active litigation. Once again, the District Court's holding would trump such factor and remove it from consideration. Had the second and third factors not been intended for consideration, they would not have been included in the first place. *Id.*

In short, the Court is satisfied that Appellants have met the three quoted eligibility requirements. Appellee has failed to demonstrate that Appellants failed to meet any of the other requirements. The Court is not convinced that a ruling in Appellants' favor would amount to a retroactive application of the law since the Act became effective during Appellants' redemption period and since they had also sought a loan modification during such time. Further, Supplementary Directive 09-01 became effective while they were in active litigation in District Court.

The Court finds no merit to Appellee's argument that Appellants are attempting to create a cause of action where none was established by statute. Appellants, as Defendants in the lower

court proceedings, were merely raising the federal provisions/directive as a defense to Appellee's claim for possession/eviction.

Finally, the Court need not address any of Appellants' remaining arguments inasmuch as the issues already considered provide sufficient grounds for relief.

## V. Conclusion

For the reasons set forth above,

The May 18, 2009 Possession Judgment entered in the 41-B District Court is REVERSED.

This matter is HEREBY REMANDED for proceedings consistent with the instant Opinion and Order.

The instant decision closes the case.

This Court retains jurisdiction.

IT IS SO ORDERED.


Dated: September 30, 2009

_____
DONALD G. MILLER
Circuit Court Judge

CC:    Matthew D. Levine
       Jerome D. Goldberg


DONALD G. MILLER
CIRCUIT JUDGE

SEP 3 0 2009

A TRUE COPY
CARMELLA SABAUGH COUNTY CLERK

BY:_____ Court Clerk

10

# EXHIBIT 4



L-2499 P-1594 Page 1 of 16
OFFICIAL SEAL Saginaw County, Michigan
Mildred N Dollak Register Of Deeds
July 07, 2008 08 46 AM

# MORTGAGE

Return To: LOAN # ▉▉▉▉▉▉▉
FLS-700-01-01, JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD , BLDG 700, FILE RECEIPT DEPT
JACKSONVILLE, FL 32256

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated        JUNE 20, 2008        ,
together with all Riders to this document.
(B) "Borrower" is NITIN M AMERSEY, *a single man*

Borrower's address is 5 APPLESHIRE, FREELAND, MI 48623
. Borrower is the mortgagor under this Security Instrument

MICHIGAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3023 1/01

▉▉-6(MI) (0811)
Page 1 of 16        Initials: ___
VMP Mortgage Solutions (800)521-7291        CVMI 06/19/08 1 33 PM ▉▉▉▉▉



20756(1)

(C) "Lender" is BANK OF AMERICA, N A

Lender is a    NATIONAL BANKING ASSOCIATION
organized and existing under the laws of    THE UNITED STATES OF AMERICA
Lender's address is 275 S VALENCIA AVE  1ST FLOOR, BREA, CA 928236340

Lender is the mortgagee under this Security Instrument
(D) "Note" means the promissory note signed by Borrower and dated  JUNE 20, 2008
The Note states that Borrower owes Lender  THREE HUNDRED SEVENTY ONE THOUSAND SIX
HUNDRED AND 00/100                                                    Dollars
(U.S. $      371,600 00    ) plus interest Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    JULY 01, 2038
(E) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments, and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account  Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers
(K) "Escrow Items" means those items that are described in Section 3
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or
other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C Section 2601 et seq )
and its implementing regulation, Regulation X (24 C.F.R, Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same

subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender, and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY                                                    [Type of Recording Jurisdiction]
of          SAGINAW                                       [Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF "

Parcel ID Number: 281282364000                          which currently has the address of
5  APPLESHIRE                                                                        [Street]
FREELAND                                      [City] , Michigan    48623       [Zip Code]
("Property Address")

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials  _____

-6(MI) (0401)                          Page 3 of 15                          Form 3023  1/01
   CMI  05/19/09  1:33 PM 6059011742

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under

Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold

Initials: N.M.A.

payments or ground rents on the Property, if any; and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials _S.M.A._

-6(MI) (0401)                                   Page 6 of 16                                   Form 3023 1/01

CVM: 08/19/08 1:23 PM 6060211747

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property

Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is

-6(MI) (0401)                                    Initials NMA

CMI 05/19/03 1:33 PM 5060811747           Page 8 of 15                    Form 3023 1/01

obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount

of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security

Initials

Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees, (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   NITIN M AMERSEY              -Borrower

_____          _____ (Seal)
                                                               -Borrower

_____ (Seal)  _____ (Seal)
                -Borrower                          -Borrower

_____ (Seal)  _____ (Seal)
                -Borrower                          -Borrower

_____ (Seal)  _____ (Seal)
                -Borrower                          -Borrower

-6(MI) (0401)                    Page 14 of 15              Form 3023 1/01
CMI 05/19/06 1 33 PM 6060911747

STATE OF MICHIGAN,  Bay                                    County ss

    Acknowledged before me in  Bay
County, Michigan, on   6-20-08                                   by

Nitin M. Amersey, a single man

DEBRA K WOODY
Notary Public, State of Michigan
County of Bay
My Commission Expires July 1, 2011
Acting in County of  Bay

                     Notary Public, State of Michigan,
                     County of
                     My commission expires
                     Acting in the County of

This instrument was prepared by.

    ROSA MARIA OROZCO
    BANK OF AMERICA, N.A.
    275 S VALENCIA AVE  1ST FLOOR
    BREA, CA  928236940

Township of Thomas, County of Saginaw, State of Michigan

Unit 64, The Grove at Apple Mountain, according to the Master Deed recorded in Liber 1980 on Pages 208 through 296, Saginaw County Records, and designated Saginaw County Condominium Plan No. 51 together with the rights in the general and limited elements, as set forth in the above Master Deed, and as described in Act 59, Public Acts of 1978, as amended

Parcel ID   28-12-3-2364-000

(20768.PFD/20768/4)

# EXHIBIT 5



L-2687 P-2038   2012028438
OFFICIAL SEAL Saginaw County, Michigan
Mildred M Bodak Register Of Deeds
September 13, 2012  10:16 AM

## CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID#  19887013
Commitment# 5200

For value received, the undersigned, BANK OF AMERICA, N.A., 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and transfers to:
OCWEN LOAN SERVICING, LLC
1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL 33409

All its interest under that certain Mortgage dated  6/20/08, executed by: NITIN M AMBHET, Mortgagor as per MORTGAGE recorded as Instrument No. 2008021546 on 7/07/08 in Book 2499 Page 1594 of official records in the County Recorder's Office of SAGINAW County, MICHIGAN.
Tax Parcel #:28-12-3-03-2354-000,   THOMAS TOWNSHIP TREASURER
Original Mortgage $371,600.00
5 APPLESHIRE, FREELAND, MI 48623

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 09/04/2012     BANK OF AMERICA, N.A.

By:
YOLANDA RODRIGUEZ, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On SEP 04 2012    before me, J. CASTANEDA , Notary Public, personally appeared YOLANDA RODRIGUEZ, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:
J. CASTANEDA

J. CASTANEDA
Commission No. 1922284
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires JANUARY 17, 2016

Prepared by: YOLANDA RODRIGUEZ
1800 TAPO CANYON RD
SIMI VALLEY, CA 93063

Recording requested by AND
When recorded mail to:
BANK OF AMERICA N.A.
DOCUMENT PROCESSING MAIL CODE:
TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX, 76155
Attn: ASSIGNMENT UNIT
Phone#: (313) 345-1611

Bank of America Home Loans
PO Box 5060
Simi Valley CA 75342

SEP 11 '12 @ 8:50

# EXHIBIT 6

**Bank of America** Home Loans



March 26, 2012

NITIN M AMERSEY
5 Appleshire Ct
Freeland, MI 48623

Loan Number: ▓▓▓▓▓▓

Dear NITIN M AMERSEY:

Thank you for contacting us to discuss your home loan needs. Our records indicate that you have not made your last three regularly scheduled payments. Foreclosure activities typically begin after four missed payments, so it is important that you take action on this issue quickly, as ignoring the situation and continuing to let your payments become past due will put you at risk of losing your home to foreclosure.

**We strongly encourage you to apply for assistance to avoid foreclosure.** Bank of America offers different programs to help keep you in your home including the Home Affordable Modification Program (HAMP), available to qualifying borrowers. If you must leave your home, we also have other options to help you avoid foreclosure such as a short sale or deed-in-lieu of foreclosure.

**Please act quickly before your options become limited. Send us your Borrower Response Package with the requested financial information in the enclosed Homeowner Checklist by April 25, 2012.** We have included a pre-paid envelope for your convenience. If you do not respond before your next payment due date and you also fail to make your next payment, your mortgage could be referred to foreclosure.

It is important that you return your Borrower Response Package as soon as possible to take advantage of the greatest number of foreclosure alternatives that may be available to you.

We want to help you avoid foreclosure, so please consider this opportunity.

Home Loan Team
Bank of America, N.A.

*P.S. We encourage you to call us if you are not interested in pursuing any of these foreclosure alternatives. We may be able to limit future calls to collect on your account.*

Enclosures: (1) Frequently Asked Questions (2) Homeowner Checklist (3) Important Notice to Help You Avoid Foreclosure (4) Uniform Borrower Assistance Form (5) IRS Form 4506-T (6) Non-Borrower Credit Authorization Form (7) Important Disclosures (8) Pre-paid return envelope

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information purposes only and not an attempt to impose personal liability for the debt. Please read the enclosed Frequently Asked Questions for more information.

In order to expedite your review for loan assistance, Bank of America, N.A. is working with a third party company, Walled Lake Credit Bureau, LLC. Federal law requires that we communicate to you that Walled Lake Credit Bureau, LLC is a debt collector and also that Walled Lake Credit Bureau, LLC is a licensed debt collector. However, the purpose of the communication is to let you know about your potential eligibility for a loan assistance program that may help you bring or keep your loan current through more affordable payments. Please see the enclosed insert for important disclosures from Walled Lake Credit Bureau, LLC.

---

**For help with your mortgage, respond by April 25, 2012.**

1. Read the instructions on the Homeowner Checklist

2. Review the enclosed:
   - Frequently Asked Questions and Important Notice to Help You Avoid Foreclosure Scams
   - Information on Avoiding Foreclosure

3. Submit your required Borrower Response Package including:
   - Uniform Borrower Assistance Form
   - IRS Form 4506-T
   - Income and Hardship documentation (described on Uniform Borrower Assistance Form)

---

**Helpful Resources**

Learn more online at:

bankofamerica.com/homeloanhelp and freddiemac.com/avoidforeclosure

**If you have questions or need help with your Borrower Response Package, please call:**

1.855.200.1049

Mon. - Fri. 9 a.m. - 9 p.m. ET
Sat. 9 a.m. - 4 p.m. ET

Mortgages funded and administered by an Equal Housing Lender 🏠

Protect your personal information before recycling this document

# EXHIBIT 7



We have received your initial Borrower
Response Package.

We will notify you in the next 10 to 15 days
if we are missing documents.

NITIN M AMERSEY
5 Appleshire Ct
Freeland, MI 48623

Loan Number: ████████                                                      May 9, 2012

Dear NITIN M AMERSEY:

Thank you for submitting your Borrower Response Package. We are currently reviewing your package to confirm that you have submitted all required documentation. This review takes approximately five days. Following our review, we will send a letter that either confirms we have all documentation to continue the evaluation or that identifies any additional documents that you need to provide. **If you receive a notice asking you to provide missing documents, it is very important to respond with the additional documents by the specified date.**

When we receive all documents to complete your Borrower Response Package (and if the package was received within the timeframe requested), we will continue the evaluation process, which takes approximately 30 days. Upon completing our evaluation, you will receive one of these three responses:

- Your loan has been approved to begin a Trial Period. This notification will come in the form of a Trial Period Plan letter, and will provide you details of your Trial Period Plan and instructions on how to proceed.

- Your loan is not eligible for this program, but may be eligible for other loan assistance options. This notification will come in the form of a letter describing other options such as a different modification program.

- We need more information from you to make our decision. We will either call you or send you a letter with this request.

### Important Information About Foreclosure

Until we receive a completed Borrower Response Package, your loan is subject to the foreclosure process. Once your loan enters the foreclosure process (or if it has already entered the foreclosure process), foreclosure activities will continue until you have been evaluated for and enter into an approved foreclosure avoidance alternative. It is important that you continue to respond to any foreclosure notice and to any request for additional documentation required to complete your Borrower Response Package. If you submit a complete Borrower Response Package less than 37 calendar days before a scheduled foreclosure sale, we will attempt to review your loan for a foreclosure alternative, but there is no guarantee we can stop the foreclosure sale. Even if we are able to approve your loan for a foreclosure alternative prior to a sale, a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the sale may not halt the scheduled sale. Also, if we receive your complete package less than 15 days before a scheduled foreclosure sale date, we are not obligated to review your package or request a postponement of the sale.

If you have questions about the loan assistance evaluation process, please call your Customer Relationship Manager at 1.800.669.6650. You may also call this number if you do not yet have an assigned Customer Relationship Manager.

We look forward to working with you throughout this process.

Home Loan Team                              **Bank of America** 🇺🇸 Home Loans
Bank of America, N.A.

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for informational purposes only and is not a demand for payment, an attempt to collect a debt or an attempt to impose personal liability for any discharged debt.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments.

Mortgages funded and administered by an Equal Housing Lender.
🔁 Protect your personal information before recycling this document.

C3_2673

# EXHIBIT 8

 

**Bank of America**
Home Loans

P.O. Box 5170
SIMI VALLEY, CA 93062-5170

0025360-0093437 LRTAB 005 ------ 939663

NITIN M AMERSEY
6 APPLESHIRE CT
FREELAND, MI 48623

C3_1670     RL01 14775 04/24/2012

Send Correspondence to:
P.O. Box 5170
Simi Valley, CA 93062-5170

Business Address:
450 American Street
Simi Valley, CA 93065-6285

**Notice Date:** May 24, 2012

**Loan No.:** ████████

**Property Address:**
5 Appleshire
Freeland, MI 48623

---

**IMPORTANT MESSAGE ABOUT YOUR HOME LOAN**

Dear NITIN M AMERSEY,

We are writing to inform you that your mortgage loan noted above will be transferred to a new servicer for the handling of all loan servicing needs such as billing, payment processing, and customer support. **Beginning June 16, 2012, your new servicer will be Ocwen Loan Servicing, LLC.** The enclosed notice outlines the important dates and contact information you will need for the transition to your new servicer.

Please be assured that this transfer does not affect any other terms or conditions of your mortgage loan, only those terms related to the servicing of the loan. This servicing transfer only applies to the loan noted above. Other home loan accounts you may have with us will not be affected by this change unless you are specifically notified.

**WHAT THIS MEANS FOR YOU**

Your loan number and payment information will change
- Through June 15, 2012, you will continue to make your monthly payment as usual.
- Ocwen Loan Servicing, LLC will begin accepting payments on June 16, 2012. Around this date, please look for further information from Ocwen Loan Servicing, LLC, including your new loan number.
- If you have a payment due before you receive a billing statement from Ocwen Loan Servicing, LLC, write your new loan number on your check and mail it to the payment address shown on the enclosed notice. (Until you receive a new loan number, you may write your old loan number on the check.)
- Any automatic payments set up with us through the PayPlan programs will be discontinued as of June 15, 2012. Please look for instructions from Ocwen Loan Servicing, LLC or contact them on or after June 16, 2012 to determine what payment options they may offer.
- If you make payments through Bank of America Online Banking or any online banking or bill payment service, you will need to update your loan number and payee information for Ocwen Loan Servicing, LLC on or after June 16, 2012.

Your loan account access will no longer be available through Bank of America
- You will no longer be able to make your payment at a Bank of America banking center on the mortgage loan being transferred. In addition, your mortgage loan information will not be available through Bank of America Online Banking.

If you have any questions or need assistance prior to June 16, 2012, please call Bank of America, N.A., toll-free at 1-800-669-6907, Monday-Friday 7a.m. - 7p.m. Local Time.

Additional Important Information
- If your payments include any optional products or insurance such as accidental death, home warranty, identity theft, unemployment insurance, etc, please read the enclosed notice carefully.
- For customers currently participating in or being considered for a loan modification program, we will transfer any supporting documentation you may have submitted to us to Ocwen Loan Servicing, LLC. You should continue to make your payments to Bank of America, N.A. through June 15, 2012. On or after June 16, 2012, your payments should be made to Ocwen Loan Servicing, LLC unless you are provided additional direction. All information regarding other foreclosure avoidance programs (e.g., forbearance, short sale, refinance or deed in lieu of

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Loan No.: ▬▬▬                                                Notice Date: May 24, 2012

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, will be assigned, sold or transferred from Bank of America, N.A. to Ocwen Loan Servicing, LLC, effective July 01, 2012.

The assignment, sale or transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those terms directly related to the servicing of your loan. Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

### YOUR SERVICER PRIOR TO JUNE 16, 2012:

Your present servicer is Bank of America, N.A. If you have any questions relating to the transfer of servicing from your present servicer, please call Bank of America, N.A. Customer Service at 1-800-669-9807, Monday-Friday 7a.m. - 7p.m. Local Time. This is a toll-free number.

### YOUR NEW SERVICER ON AND AFTER JUNE 16, 2012:

Your new servicer will be Ocwen Loan Servicing, LLC. The business address for Ocwen Loan Servicing, LLC is: 1661 WORTHINGTON ROAD., SUITE 100 WEST PALM BEACH FL 33409.

**Toll-free Number**
The toll-free telephone number of Ocwen Loan Servicing, LLC is 1-800-746-2936. If you have any questions relating to the transfer of servicing to your new servicer, please call Ocwen Loan Servicing, LLC Customer Service toll-free at 1-800-746-2936, 8:00 AM to 9:00 PM, Eastern Standard Time, Monday through Friday, 8:00 AM to 5:00 PM EST on Saturday, and Noon to 9:00 PM EST on Sunday.

**Address for Correspondence (other than payments)**
The address to send written correspondence to Ocwen Loan Servicing, LLC (other than payments) is: Ocwen Loan Servicing, LLC, ATTN: Customer Care Center P.O. BOX 24738 West Palm Beach FL 33416-4738.

**Address for Mailed Payments**
The address to send payments to Ocwen Loan Servicing, LLC is: Ocwen Loan Servicing, LLC, ATTN: PAYMENT PROCESSING, P.O. BOX 6440 CAROL STREAM IL 60197-6440. Please include your loan number on all checks, cashier checks and other payments sent to Ocwen Loan Servicing, LLC.

### INFORMATION CONCERNING YOUR LOAN PAYMENTS:

The date that Bank of America, N.A. will stop accepting payments from you is June 15, 2012.

The date that your new servicer Ocwen Loan Servicing, LLC will start accepting payments from you is June 16, 2012. Send all payments due on or after that date to your new servicer.

### INFORMATION ABOUT OPTIONAL INSURANCE PRODUCTS:

The transfer of servicing rights may affect the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance in the following manner: Bank of America, N.A. will no longer make payments to the insurance company on your behalf. As a result, your coverage will be cancelled.

You should take the following action to maintain coverage: Coverage will be cancelled. To see if it is possible to maintain coverage, you will need to contact your new servicer to discuss coverage options. You may also contact your insurance provider to find out if other billing options can be arranged.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

foreclosure) will also be forwarded to Ocwen Loan Servicing, LLC for processing. If your loan was awaiting a decision regarding qualification for these programs, that decision will now be made by Ocwen Loan Servicing, LLC. Please be advised that this transfer may extend the time needed for a final decision on pending modification or other foreclosure prevention program requests.

**Legal Notice**

As a result of this servicing transfer, we have enclosed the Real Estate Settlement Procedures Act (RESPA) Servicing Transfer Notice. No action is required on your part in response to the notice, but we recommend you retain the notice for your records.

**THANK YOU**

Beginning June 16, 2012, Ocwen Loan Servicing, LLC can assist you with any questions related to your loan and the transfer of servicing. Ocwen Loan Servicing, LLC's Customer Service can be reached toll-free at 1-800-746-2936, 8:00 AM to 9:00 PM, Eastern Standard Time, Monday through Friday, 8:00 AM to 5:00 PM EST on Saturday, and Noon to 9:00 PM EST on Sunday.

Thank you for your business. We appreciate the opportunity to have served your home loan needs.

Home Loan Team
Bank of America, N.A.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt or demand a payment.

## ABOUT YOUR RIGHTS UNDER RESPA

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding Bank of America, N.A.'s servicing of your loan, it must be sent to this address:

**Bank of America, N.A.**
**Customer Service Correspondence, CA6-919-01-41**
**P.O. Box 5170**
**SIMI VALLEY, CA 93062-5170**

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business-Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Bank of America, N.A. Member FDIC.  Equal Housing Lender.  © 2012 Bank of America Corporation.  Trademarks are the property of Bank of America Corporation. All rights reserved. Some products may not be available in all states.  This is not a commitment to lend.  Restrictions apply.

# EXHIBIT 9




To continue our review of your loan for foreclosure prevention alternatives, we must receive the requested items by June 24, 2012.

May 25, 2012

NITIN M AMERSEY
5 APPLESHIRE CT
FREELAND, MI 48623

Loan Number: ▓▓▓▓▓▓

Dear NITIN M AMERSEY:

Thank you for your interest in foreclosure prevention alternatives. We need information relating to your financial situation and the circumstances of your hardship to determine if your loan is eligible for this program.

As of the date of this letter, we cannot complete our review because some information we need is missing or incomplete.

Please complete and fax the required documentation using the enclosed fax cover sheet to 1.888.258.7329 or return using the enclosed FedEx envelope. **We must receive this information no later than June 24, 2012.**

**Please ensure all submissions are complete.** You may find the list below contains one or more documents you submitted as part of your Borrower Response Package. If so, they are listed because we need more information about them or because they were submitted with missing or incomplete information. When providing the additional documentation or clarifications, remember the following helpful hints:

- Write your loan number at the bottom of all pages if it's not already listed. This will aid in identifying your documents should they be sent separately or get separated.

- Include ALL PAGES of any document with multiple pages. For instance, if the last page of your bank statement indicates Page 6 of 6, ensure you provide the copy of all six pages.

- The signature of each borrower and the date the document was signed is required for many documents. Please make sure all the proper signatures and dates are provided for any documents listed below.

- Some requested documents have columns of numbers that must be added or subtracted to determine a total value (for example, Request for Modification / Hardship Affidavit or Uniform Borrower Assistance Form (Form 710), profit and loss statement). Please ensure that complete and accurate totals are provided for any and all columns.

- If a document you previously submitted is listed below, it may be too old to be usable. Please send us a copy of the most recent version(s) of the document.

**Important Information About Foreclosure**
Until we receive a completed Borrower Response Package, your loan is subject to the foreclosure process. Once your loan enters the foreclosure process (or if it has already entered the foreclosure process), foreclosure activities will continue until you have been evaluated for and enter into an approved foreclosure avoidance alternative. It is important that you continue to respond to any foreclosure notice and to any request for additional documentation required to complete your Borrower Response Package.

If you submit a complete Borrower Response Package less than 37 calendar days before a scheduled foreclosure sale, we will attempt to review your loan for a foreclosure alternative, but there is no guarantee we can stop the foreclosure sale. Even if we are able to approve your loan for a foreclosure alternative, a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the sale may not halt the scheduled sale. Also, if we receive your complete package less than 15 days before a scheduled foreclosure sale date, we are not obligated to review your package or request a postponement of the sale.

C3_648-5 GSEIINBAU0E

Please submit the following information for each borrower:

- **IRS Form 4506T (enclosed)** -- This form allows us to request a copy of the tax return for each borrower. Borrowers who filed their tax returns jointly may send in one IRS Form 4506T signed and dated by both joint filers.

- **Pay Stubs** - The most recent pay stub that reflects at least 30 days of year to date earnings for each borrower who is either a salaried employee or hourly wage earner. (For example: if you are paid weekly, provide four pay stubs that cover the full month and if you are paid bi-monthly, two pay stubs at a minimum.) If you are new to your job and do not yet have a pay stub, submit a letter from employer verifying employment start date and salary or rate of pay.

- **Self Employment Income Documentation** - Each self-employed borrower must provide copies of each of the following: 1) The most recent quarterly or year-to-date profit and loss statement for a period of no fewer than three (3) months. The statement must include the business name, income, expenses, net income after expenses and period start and end dates (for example 10/1/2011 through 12/31/2011). The statement must be signed and dated by the borrower.  2) Copies of the applicable self-employment tax schedule (C, or E and K-1). If you are no longer self employed, please provide a copy of your cancelled business license or letter of explanation.

- **K-1 / Tax Form 1120S or 1065B** - A copy of a shareholder's share of income for self employment income listed on Schedule E of your recent tax returns for verification of percentage of ownership.

- **Homeowners Association Documentation** - Letter or bill from homeowners/condominium association reflecting dues amount and frequency paid.

- **Proof of Hardship** - Copy of documentation to support the hardship indicated on the Hardship Affidavit / Request for Modification or Uniform Borrower Assistance Form (Form 710). Please see the enclosed Request for Hardship Documentation for a list of specific documents.

- **Business / Corporate Tax Returns** - A signed copy of the most recently filed Business tax return, with all schedules and tax forms. If you have filed a Tax Extension for the current year, provide a copy of the previous year and Tax Filing Extension Form. If you are not required to file a business tax return, please submit a letter of explanation.

- **Form 710 Uniform Borrower Assistance Form (enclosed)** -- This form must be completed in its entirety. Sections requiring a total must be completed and accurately totaled. The form must be signed and dated by all borrowers.

- **Hardship Letter** - A written explanation describing the specific nature of your Hardship.

**Please note: Keep a copy of all documents for your records. Do not send original documentation unless otherwise noted.**

If you have any questions about our request for documents or want to confirm that we have received your missing information, please call me at 1.800.669.6650. We want to work with you and urge you to send us your documentation as soon as possible.

Deborah Hammond
Home Loan Team
Bank of America, N.A.

**Bank of America** 〰〰 Home Loans

**Enclosures:** 1) Pre-paid envelope  2) Customized Cover Sheet 3) IRS Form 4506-T 4) 710 Uniform Borrower Assistance Form 5) Request for Proof of Hardship Documentation

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments.

Mortgages funded and administered by entity. Equal Housing Lender.
Protect your personal information before recycling this document

# EXHIBIT 10



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

OCWEN

6/28/2012

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:        5 Appleshire Ct, Freeland, MI 48623

Dear Borrowers: Nitin M Amersey

Your mortgage payment is now 60 days or more past due and your loan is in default. We are concerned about your missed mortgage payment — and want you to be aware of assistance available to you — in case you are unable to bring your payments current.

**We Are Here to Help You**

It is critical that you work with us on a resolution for any issues that affect your ability to make timely mortgage payments, whether your challenges are temporary or long term.

The sooner you respond, the more quickly we can determine whether you qualify for assistance.

**Options May Be Available**

The right option for you depends on your individual circumstances. If you provide all required information and documentation about your situation, we can determine if you qualify for temporary or long-term relief, including solutions that may allow you to stay in your home (refinance, repayment, forbearance, loan modification) or leave your home while avoiding foreclosure (short sale or deed-in-lieu of foreclosure).

For more details, please see the attachment on Avoiding Foreclosure.

**Send Us the Information We Need to Help You**

Requesting help is the first step. Start by providing information and documentation to help us understand the challenges you are facing. To do this, follow the detailed instructions on the attached Homeowner Checklist to complete and submit your Borrower Response Package to us.

Once we have received and evaluated your information, we will contact you regarding your options and next steps.

**Learn More and Act Now**

For more information, please see the Frequently Asked Questions and other information provided with this letter. If you need assistance, contact our customer support team at (800) 746-2936.

**Remember, you need to take action by completing and returning the entire Borrower Response Package by 7/28/2012.**

Sincerely,

Customer Support
Ocwen Loan Servicing, LLC

TO RECEIVE HELP WITH
YOUR MORTGAGE, YOU
MUST ACT BY 7/28/2012:

1. See the instructions on the Homeowner Checklist.
2. Review
   · Avoiding Foreclosure
   · Frequently Asked Questions
   · Beware of Foreclosure Rescue Scams
3. Submit required Borrower Response Package:
   · Uniform Borrower Assistance Form (Borrower Assistance Form attached)
   · Request for Transcript (attached)
   · Income Documentation (described for borrower's situation)
   · Hardship Documentation (described for borrower's situation)
   If you need assistance, contact us immediately at:
   (800) 746-2936

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS #: 1852

# EXHIBIT 11



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

July 06, 2012

VIA First Class Mail
VIA Certified Mail (return receipt requested)
Certified Number: 71069017515156283092
Reference Code: 1201

Nitin M. Amersey

5 Appleshire Ct
Freeland, MI 48623-0000

Loan Number:
Property Address:          5 Appleshire Ct ,
                          Freeland, MI 48623-0000

## NOTICE OF DEFAULT

**AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA:**
Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

Dear Borrower (s):

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received a Chapter 7 discharge under the Bankruptcy Code of the United States or if your mortgage is the type which has been discharged pursuant to a completed Chapter 13 plan, this notice is not intended and does not constitute an attempt to collect a debt against you personally. If the foregoing applies to you, this notice is sent to you only as a preliminary step to a foreclosure on the mortgage against the above-referenced property. Provisions may be contained within your mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because OCWEN has not been notified of your bankruptcy case. If the foregoing applies to you, it is IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

If you have not recently filed bankruptcy or received a bankruptcy discharge, you are hereby notified that this letter is an attempt to collect a debt . All information obtained will be used for that purpose. The debt is owed to OCWEN as the owner or servicer of your home loan and mortgage.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt of this letter, the debt will be assumed to be valid by OCWEN. If you notify OCWEN in writing within thirty (30) days that the debt or a portion of the debt is disputed, OCWEN will send you verification of the debt. If you would like to obtain such verification, direct your request in writing to the Loan Resolution Consultant within thirty (30) days. The failure to dispute the validity of the debt may not be construed by any court as an admission of liability by you.

Your mortgage payments are past due, which puts you in default of your loan agreement. As of July 06, 2012, you owe the following:

| | |
|---|---|
| Principal and Interest | $ 16,441.39 |
| Interest Arrearage | $ 0.00 |
| Escrow | $ 3,319.29 |
| Late Charges | $ 117.44 |
| Insufficient Funds Charges | $ 0.00 |
| Fees / Expenses | $ 20.00 |
| Suspense Balance (CREDIT) | $ 0.00 |
| Interest Reserve Balance (CREDIT) | $ 0.00 |

DEMAND05.39

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

TOTAL DUE          $ 19,898.12

On or before August 06, 2012, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that become due in the interim must also be included.

Failure to bring your account current may result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action (if possible). You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

OCWEN will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once your written authorization has been obtained, as required by law.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the mortgage loan, depending on the terms of the note and mortgage. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by OCWEN to enforce the mortgage in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the mortgage loan will be returned, and will not stop any foreclosure proceedings that have begun. PRIOR TO SUBMITTING PAYMENT, YOU MAY WISH TO CALL US TO VERIFY THE EXACT AMOUNT DUE.

*Important Information for Customers in Washington*
Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

- The statewide foreclosure hotline recommended by the Housing Finance Commission:
  Toll-free: 1-877-894-HOME (1-877-894-4663)
  http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm

- United States Department of Housing and Urban Development:
  Toll-free: 1-877-741-3281
  Local counseling agencies in Washington:
  http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc

- The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys:
  Toll-free: 1-800-606-4819
  http://nwjustice.org/what-clear

In addition, A HUD counseling agency may be able to provide you with assistance. To locate the HUD approved counseling agency in your area, call the HUD Housing Counseling Service at (800) 569-4287 or consult HUD's website at www.HUD.gov.

**Your failure to contact a housing counselor or attorney may result in your losing certain opportunities, such as meeting with your lender or participating in mediation in front of a neutral third party.**

If you are unable to bring your account current, I urge you to call us immediately to discuss possible alternatives to foreclosure.

If you have the desire to remedy this situation, we want to assist you in trying to reach that goal. OCWEN would like to present you with some of the alternatives that might be available regarding your delinquent mortgage loan. While our primary objective is the collection of past due amounts on your loan, we want to work with you to find the best available alternative for you to bring your mortgage loan obligation current.

Please visit our website at www.ocwen.com where you can review your account and enter your financial information at your convenience.

Pranav Patekar has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents

Sincerely,

Ocwen Loan Servicing, LLC

ADDRESS WRITTEN CORRESPONDENCE TO:
Research Department
Ocwen Loan Servicing, LLC
P.O. Box 24736

DEMAND05.39

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

OCWEN

Toll Free Phone: 800-746-2936

West Palm Beach, FL 33416-4736

**PAYMENT REMITTANCE INFORMATION (always include Loan # 7130389260 with your payment)**

| Money Gram | Overnight Address | VIA Regular Mail |
|---|---|---|
| Receive Code: 2355 | Ocwen Loan Servicing, LLC | Ocwen Loan Servicing, LLC |
| City: Orlando | 1661 Worthington Road, Suite 100 | P.O. Box 6440 |
| St: FL | West Palm Beach, FL 33409 | Carol Stream, IL 60197-6440 |
| Loan # 7130389260 | Attention: Cashiering Department | |

DEMAND05.39

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS # 1852*

# EXHIBIT 12



**Ocwen Loan Servicing, LLC**
*Helping Homeowners is What We Do*

WWW.OCWEN.COM

07/28/12

Nitin M Amersey

5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:    5 Appleshire Ct, Freeland, MI 48623

Dear Borrower(s),

Recently we called your attention to your severely delinquent mortgage loan referenced above. We either have not heard from you or we have not reached a resolution. It is imperative that you contact us immediately to resolve this matter. Failure to do so can result in the accumulation of fees and costs associated with foreclosure, the sale of this property at auction and even eviction.

Time is running out.

We may have resolutions available to help you avoid losing your home and having to make plans to vacate the property. Remember, poor credit may affect your ability to secure another place to live even as a tenant of a rental property.

There is still time to resolve this matter, and we may have programs available to help you.

Contact the Customer Care Center today at 1-800-74OCWEN (1-800-746-2936) to learn how this matter can be resolved and avoid the unnecessary inconvenience and added expenses of foreclosure.

Helping Homeowners is What We Do.

Sincerely,

Ocwen Loan Servicing, LLC

If you are currently in active bankruptcy, or if you received a bankruptcy discharge, which included this debt, this communication is not intended to, and does not constitute, an attempt to reaffirm your debt or to collect a debt against you personally.   Please review the alternatives and feel free to contact us.

We've extended our hours because of the large number of people taking our offers. We're now open Monday – Friday 8:00 am – 9:00 pm, Saturday 8:00 am - 5:00pm and Sunday 12:00 pm to 9:00pm ET.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
*Helping Homeowners is What We Do*

WWW.OCWEN.COM

08/08/12

Nitin M Amersey

5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:      5 Appleshire Ct, Freeland, MI 48623

Dear Borrower(s),

Recently we called your attention to your severely delinquent mortgage loan referenced above. We either have not heard from you or we have not reached a resolution. It is imperative that you contact us immediately to resolve this matter. Failure to do so can result in the accumulation of fees and costs associated with foreclosure, the sale of this property at auction and even eviction.

Time is running out.

We may have resolutions available to help you avoid losing your home and having to make plans to vacate the property. Remember, poor credit may affect your ability to secure another place to live even as a tenant of a rental property.

There is still time to resolve this matter, and we may have programs available to help you.

Contact the Customer Care Center today at 1-800-74OCWEN (1-800-746-2936) to learn how this matter can be resolved and avoid the unnecessary inconvenience and added expenses of foreclosure.

Helping Homeowners is What We Do.

Sincerely,

Ocwen Loan Servicing, LLC

If you are currently in active bankruptcy, or if you received a bankruptcy discharge, which included this debt, this communication is not intended to, and does not constitute, an attempt to reaffirm your debt or to collect a debt against you personally.  Please review the alternatives and feel free to contact us.

We've extended our hours because of the large number of people taking our offers. We're now open Monday – Friday 8:00 am – 9:00 pm, Saturday 8:00 am - 5:00pm and Sunday 12:00 pm to 9:00pm ET.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS # 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

8/14/2012

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:     5 Appleshire Ct, Freeland, MI 48623

Dear Borrowers: **Nitin M Amersey**

We Are Here to Help You! It is critical that you work with us on a resolution for any issues that affect your ability to make timely mortgage payments, whether your challenges are temporary or long term.
The sooner you respond, the more quickly we can determine whether you qualify for assistance.

**Options May Be Available**
The right option for you depends on your individual circumstances. If you provide all required information and documentation about your situation, we can determine if you qualify for temporary or long-term relief, including solutions that may allow you to stay in your home (refinance, repayment, forbearance, loan modification) or leave your home while avoiding foreclosure (short sale or deed-in-lieu of foreclosure).
For more details, please see the attachment on Avoiding Foreclosure.

**Send Us the Information We Need to Help You**
Requesting help is the first step. Start by providing information and documentation to help us understand the challenges you are facing. To do this, follow the detailed instructions on the attached Homeowner Checklist to complete and submit your Borrower Response Package to us.

Once we have received and evaluated your information, we will contact you regarding your options and next steps.

**Learn More and Act Now**
For more information, please see the Frequently Asked Questions and other information provided with this letter. If you need assistance, contact our customer support team at (800) 746-2936.

**Remember, you need to take action by completing and returning the entire Borrower Response Package by 9/13/2012.**

PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Customer Support
Ocwen Loan Servicing, LLC

**TO RECEIVE HELP WITH YOUR MORTGAGE, YOU MUST ACT BY 9/13/2012**

1. See the instructions on the Homeowner Checklist
2. Review
   * Avoiding Foreclosure
   * Frequently Asked Questions
   * Beware of Foreclosure Rescue Scams
3. Submit required Borrower Response Package
   * Uniform Borrower Assistance Form (Borrower Assistance Form) (attached)
   * IRS Form 4506T-EZ (attached)
   * Income Documentation (described on Borrower Assistance Form)
   * Hardship Documentation (described on Borrower Assistance Form)

If you need assistance, contact us immediately at:
(800) 746-2936

- 1 -

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS #: 1852

# EXHIBIT 13



**OCWEN**

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

9/19/2012                                                                  Loan #▮▮▮▮▮▮▮

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

## Important Information Regarding
## Your Modification Application

**Dear Ocwen Customer,**

Ocwen would like to take this opportunity to thank you for submitting an application for assistance. We value your business and want to assure you that we are processing your request as quickly as possible. To better serve you during this time, we have provided answers to the most frequently asked questions from customers who have similarly applied for assistance.

### FREQUENTLY ASKED QUESTIONS

**What happens after I submit my financial package?**

<u>Step 1</u> -- The first step in the approval process is to have your financial package reviewed for completeness. We must make sure that all of the required information has been submitted and the applicable forms are signed and dated appropriately. After you submit the financial package, there is no need to call us to check on it. If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect. If your package is complete, it will automatically move to underwriting.

<u>Step 2</u> -- Once the package has been certified as complete, your application moves to the underwriting stage where your eligibility is determined. If you have applied for assistance on your primary residence and your loan is a first lien, Ocwen will first look to qualify you for the federal government's Home Affordable Modification Program (HAMP). If we determine that you do not qualify for the HAMP modification, we will attempt to qualify you for an Ocwen sponsored modification program automatically. If you are applying for assistance on an investment property or second lien mortgage, you may still qualify for an Ocwen sponsored modification. If you do not qualify for either an HAMP or Ocwen modification, we will send you a letter with information on alternatives.

<u>Step 3</u> - If you qualify, we will send you either a Trial Period Plan offer or a modification offer depending on the program. It takes approximately 30 days for us to complete our review.

**How can I get an update on the application process?**

If you submit a complete financial package, you may not receive any notification until your eligibility is determined. It is not necessary to call us to obtain an update as your request will be processed in the order in which it is received. The most important thing you can do is to ensure your financial package is complete when submitting your request.

**Will a foreclosure occur if I participate in the Home Affordable Modification program?**

While we consider your request, we will not initiate a new foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure as long as we have received all required documents and you have met the eligibility requirements.

**Will it help to speak to an Ocwen Representative?**

We know your time is valuable, so we do not want you to feel the need to follow-up via phone. If you call us while the package is being processed, the representative will not have any new information. Please rest assured our representatives are working diligently to process your application.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS# 1852



OCWEN

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

We are committed to helping you retain your home. That's why we are currently evaluating your mortgage for eligibility in the Home Affordable Modification Program ("HAMP") which would modify the terms of your loan and make your mortgage payments more affordable. If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP. However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation.

**HAMP Eligibility**
● **If you are eligible for HAMP, you will enter into a "trial period". You will receive a Trial Period Plan Notice which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the HAMP trial period). To accept the Trial Period Plan, you must make your first trial payment by the specified due date. Once you accept, we will halt the foreclosure process as long as you continue to make your required trial plan payments.**

● If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with the pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.

**Important—Do not ignore any foreclosure notices.**
The HAMP evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home. While you will not lose your home during the HAMP evaluation, to protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your HAMP request, contact us at (800) 746-2936. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**Questions**
Call (800) 746-2936 if you cannot afford to make your trial period payments, but want to remain in your home. Or if you have decided to leave your home, contact us—we have other options that may be able to help you avoid foreclosure.

We are available Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 09:00 am to 9:00 pm ET.

PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

**Sincerely,**

**Ocwen Loan Servicing, LLC**

**HELPING HOMEOWNERS IS WHAT WE DO!**

**FINANCIAL COUNSELING SERVICES**

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

**HUD Approved Housing Counseling:**     1-800-569-4287 www.HUD.gov

**HOPE Hotline Number:**     1-888-995-4673

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS# 1852

# EXHIBIT 14

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO
WWW.OCWEN.COM

OCWEN

9/20/2012

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:     5 Appleshire Ct, Freeland, MI 48623

Dear Borrower,

Thank you for submitting your application for foreclosure prevention assistance. Based on our review of the information you provided, the following documentation is required to complete the application process.

As of the date of this letter, if you have already submitted the documentation requested below you may disregard this notice.

**STEP 1:** Please provide a copy of the documents as described in the instructions below:

-We did not receive the required income documents to support your self employment income. Please include: (i) a complete, signed individual federal income tax return; (ii) as applicable, the business's tax return; AND (iii) either (a) the most recent signed and dated quarterly or year-to-date profit/loss statement that reflects activity for the most recent three months OR (b) copies of the bank statements for the business account for the last two months evidencing continuation of the business's activity.,We did not receive your completed, signed and dated uniform Borrower Assistance Form.,We did not receive your completed, signed and dated Ocwen Financial Form.,We did not receive two most recent pay stubs that reflect at least 30 days of year to date earnings for each borrower.

**STEP 2:  The documentation listed above must be received by 10/5/2012.** Failure to provide these documents within the timeline may delay your application process.  Please send copies.  Do not send originals.

Send a copy of this letter and the documents to the following:

To expedite processing:
          **FAX TO:** (407) 737-6174     ***** OR *****     **SCAN AND E-MAIL TO:** mod@ocwen.com
You may also mail your application to:

Ocwen Loan Servicing, LLC
Attn: Home Retention Department
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

If you have any questions, please contact Ocwen at (800) 746-2936. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET.

PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Letter

NMLS #: 1852

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO
WWW.OCWEN.COM

OCWEN

## FREQUENTLY ASKED QUESTIONS

**What happens after I submit my financial package?**

Step 1 – After we receive your financial package, we will review it for completeness, making sure that all of the required information has been submitted and that the applicable forms are signed and dated appropriately. During this time, you will also be assigned a Relationship Manager, who will monitor your account during the review process and meet with you as needed to review options or address issues with your application. You will receive a letter with his or her name and more information about their role when a Relationship Manager is assigned to your account.

If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect, and we will follow up with a phone call to schedule an appointment with your Relationship Manager to review the missing documents with you. Otherwise, it will automatically move on to our Underwriting department for processing.

Step 2 – Once the package or your request has been certified as complete, your application moves to the Underwriting stage where your eligibility is determined. We will review your account based on the resolution options allowed by the owner of your loan. If you indicate your desire is to remain in your home, we will start the review with our various loan modification options, and determine your eligibility for those programs first. If you do not want to keep the property, or if your account doesn't qualify for a modification, we will review your eligibility for other resolution options that we can offer. The review process typically takes 30 days once all of the documents are submitted and determined to be complete.

Step 3 – If you qualify for one of our modifications, we will send you either a Trial Period Plan offer or a modification offer depending on the program. If we are able to offer you a different type of resolution, we will send you information about the program and an agreement to execute. We will also contact you by phone to set up an appointment with your Relationship Manager to review these documents and answer any questions that you may have about the resolution. If you do not qualify for any resolution options that we offer, we will send you a letter with information on additional alternatives.

**How can I get an update on the application process?**

If you submit a complete Borrower Response Package, you may not receive any notification until your eligibility is determined. The most important thing you can do is to ensure your Borrower Response Package is complete when submitting your request. Our Customer Care Representatives are available to answer your account questions; however, they will not have any information about the status of the application while it is being reviewed.

**What happens if I am eligible for a modification?**

If you are eligible for a modification, you will receive a Trial Period Plan offer which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the trial period). To accept the Trial Period Plan offer, you must make your first trial payment by the specified due date. Once you accept, we will suspend or stop the foreclosure process as long as you continue to make your required trial plan payments.

**What if I'm not eligible for a modification?**

If you do not qualify for a modification, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with any pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.

If you are not eligible or become disqualified while in a Trial Period Plan, we still may be able to work with you to avoid foreclosure. The sooner that you contact us, the more options we may be able to provide you. We urge you to contact us right away.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Letter

NMLS #: 1852

**What should I do if I get a foreclosure notice?**

First, do not ignore them! The review of your Borrower Response Package and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home.

To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your Borrower Response Package request, contact us at (800) 746-2936. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**What if I have questions or can't make payments?**

If you cannot afford your trial period payments and want to keep your home, or if you have decided to give up your home, please contact us. We may have options available for you to avoid foreclosure.

Call (800) 746-2936 to learn more about these options. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET. You can also contact the financial counseling services listed below for information and assistance regarding government programs and housing counseling.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Letter

*NMLS #: 1852*

OCWEN

HELPING HOMEOWNERS IS WHAT WE DO
WWW.OCWEN.COM

## ALTERNATIVES TO FORECLOSURE

Ocwen offers a number of programs to assist you in avoiding foreclosure. Your Relationship Manager will be able to discuss these options with you in more detail. Here are some of the options:

1.  **MODIFICATION** – A change to one or more terms of the original mortgage agreement. This may include a change in interest rate, loan balance or term, which may lower your payment and bring the account current.

2.  **HOME AFFORDABLE FORECLOSURE ALTERNATIVES PROGRAM (HAFA)** If your mortgage payment is unaffordable and you are interested in transitioning to more affordable housing, you may be eligible for a short sale or deed-in-lieu of foreclosure through the federal government's HAFA program.

3.  **LISTING YOUR PROPERTY FOR SALE -** By listing your property, you may receive a sale offer acceptable to both you and to Ocwen. The sale of your property could help you to avoid a foreclosure sale of your home.

4.  **DEED IN LIEU OF FORECLOSURE -** If you do not wish to keep the property, then depending on your current financial situation, Ocwen may accept the deed to the property and extinguish the debt, even if the property is worth less than the loan balance. The property title must be clear of any other liens.

## FOR ADDITIONAL ASSISTANCE:

### *Financial Counseling Services*

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

| | | |
|---|---|---|
| HUD Approved Housing Counseling: | 1-800-569-4287 | www.HUD.gov |
| HOPE Hotline Number: | 1-888-995-4673 | |
| Making Home Affordable Program: | | www.makinghomeaffordable.gov |
| Fannie Mae Assistance Programs: | | www.knowyouroptions.com |

### *For Borrowers in New York:*

The New York State Banking Department website provides detailed information about programs and services that are available to you for information and assistance in avoiding foreclosure. Please visit http://www.banking.state.ny.us for more information.

### *For Borrowers in North Carolina:*

The North Carolina Commissioner of Banks website provides resources related to avoiding foreclosure on the "Need Foreclosure Help?" page. Please visit http://www.nccob.gov/public for more information.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Template

*NMLS# 1852*

# EXHIBIT 15

PROOF OF PUBLICATION                                    BIRCH RUN/BRIDGEPORT HERALD

**STATE OF MICHIGAN**
**County of Saginaw** } ss.

TO: Trott & Trott, P.C.

31440 Northwestern Hwy., Suite 200, Farmington Hills, MI 48334-2525

Michael J. Harrington, being first duly sworn, says that he is the publisher of THE BIRCH RUN/BRIDGEPORT HERALD a newspaper published in the English language for the dissemination of local or transmitted news and intelligence of a general character and legal news, which is a duly qualified newspaper, and that annexed hereto is a copy of a certain order taken from said newspaper, in which the order was published.

| | | | |
|---|---|---|---|
| September 12, | A.D. 2012 | | A.D. 2012 |
| September 19, | A.D. 2012 | | A.D. 2012 |
| September 26, | A.D. 2012 | | A.D. 2012 |
| October 3, | A.D. 2012 | | A.D. 2012 |
| | A.D. 2012 | | A.D. 2012 |
| | A.D. 2012 | | A.D. 2012 |
| | A.D. 2012 | | A.D. 2012 |

Michael J. Harrington

Subscribed and sworn to before me this ___3rd___ day of October A.D. 2012

Marcine Jo Keeler          Notary Public, Genesee County, Michigan
(Acting in Saginaw County

My Commission Expires February 25, 2013

# EXHIBIT 16

*Ocwen Loan Servicing, LLC*
**LPING HOMEOWNERS IS WHAT WE DO!**
**WWW.OCWEN.COM**

OCWEN

9/25/2012

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number: ████████████
Property Address:      5 Appleshire Ct, Freeland, MI 48623

Dear Borrower,

Thank you for submitting your application for foreclosure prevention assistance. Based on our review of the information you provided, the following documentation is required to complete the application process.

As of the date of this letter, if you have already submitted the documentation requested below you may disregard this notice.

**STEP 1:** Please provide a copy of the documents as described in the instructions below:
-We did not receive the required income documents to support your self employment income. Please include: (i) a complete, signed individual federal income tax return; (ii) as applicable, the business's tax return; AND (iii) either (a) the most recent signed and dated quarterly or year-to-date profit/loss statement that reflects activity for the most recent three months OR (b) copies of the bank statements for the business account for the last two months evidencing continuation of the business's activity.,We did not receive the required income documents to support your self employment income. Please include: (i) a complete, signed individual federal income tax return; (ii) as applicable, the business's tax return; AND (iii) either (a) the most recent signed and dated quarterly or year-to-date profit/loss statement that reflects activity for the most recent three months OR (b) copies of the bank statements for the business account for the last two months evidencing continuation of the business's activity.,Your Ocwen Financial Form was not legible.,Your Ocwen Financial Form was not legible.,We did not receive two most recent pay stubs that reflect at least 30 days of year to date earnings for each borrower.,We did not receive two most recent pay stubs that reflect at least 30 days of year to date earnings for each borrower.

**STEP 2:** The documentation listed above must be received by 10/10/2012. Failure to provide these documents within the timeline may delay your application process. Please send copies. Do not send originals.

Send a copy of this letter and the documents to the following:

**To expedite processing:**
FAX TO: (407) 737-6174     ***** OR *****     SCAN AND E-MAIL TO: mod@ocwen.com
You may also mail your application to:

Ocwen Loan Servicing, LLC
Attn: Home Retention Department
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

If you have any questions, please contact Ocwen at (800) 746-2936. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET.

PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

**IBRP Letter**

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS #: 1852

*Ocwen Loan Servicing, LLC*
**HELPING HOMEOWNERS IS WHAT WE DO! ™**
**WWW.OCWEN.COM**

OCWEN

## FREQUENTLY ASKED QUESTIONS

**What happens after I submit my financial package?**

Step 1 – After we receive your financial package, we will review it for completeness, making sure that all of the required information has been submitted and that the applicable forms are signed and dated appropriately. During this time, you will also be assigned a Relationship Manager, who will monitor your account during the review process and meet with you as needed to review options or address issues with your application. You will receive a letter with his or her name and more information about their role when a Relationship Manager is assigned to your account.

If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect, and we will follow up with a phone call to schedule an appointment with your Relationship Manager to review the missing documents with you. Otherwise, it will automatically move on to our Underwriting department for processing.

Step 2 – Once the package or your request has been certified as complete, your application moves to the Underwriting stage where your eligibility is determined. We will review your account based on the resolution options allowed by the owner of your loan. If you indicate your desire is to remain in your home, we will start the review with our various loan modification options, and determine your eligibility for those programs first. If you do not want to keep the property, or if your account doesn't qualify for a modification, we will review your eligibility for other resolution options that we can offer. The review process typically takes 30 days once all of the documents are submitted and determined to be complete.

Step 3 – If you qualify for one of our modifications, we will send you either a Trial Period Plan offer or a modification offer depending on the program. If we are able to offer you a different type of resolution, we will send you information about the program and an agreement to execute. We will also contact you by phone to set up an appointment with your Relationship Manager to review these documents and answer any questions that you may have about the resolution. If you do not qualify for any resolution options that we offer, we will send you a letter with information on additional alternatives.

**How can I get an update on the application process?**

If you submit a complete Borrower Response Package, you may not receive any notification until your eligibility is determined. The most important thing you can do is to ensure your Borrower Response Package is complete when submitting your request. Our Customer Care Representatives are available to answer your account questions; however, they will not have any information about the status of the application while it is being reviewed.

**What happens if I am eligible for a modification?**

If you are eligible for a modification, you will receive a Trial Period Plan offer which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the trial period). To accept the Trial Period Plan offer, you must make your first trial payment by the specified due date. Once you accept, we will suspend or stop the foreclosure process as long as you continue to make your required trial plan payments.

**What if I'm not eligible for a modification?**

If you do not qualify for a modification, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with any pending foreclosure action, but **no foreclosure sale will be conducted and you will not lose your home.**

If you are not eligible or become disqualified while in a Trial Period Plan, we still may be able to work with you to avoid foreclosure. The sooner that you contact us, the more options we may be able to provide you. We urge you to contact us right away.

**IBRP Letter**

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS #: 1852*



*Ocwen Loan Servicing, LLC*
H\_ING HOMEOWNERS IS WHAT WE DO! ™
[WWW.OCWEN.COM](WWW.OCWEN.COM)

O C W E N

**What should I do if I get a foreclosure notice?**

First, do not ignore them! The review of your Borrower Response Package and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home.

To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your Borrower Response Package request, contact us at (800) 746-2936. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**What if I have questions or can't make payments?**

If you cannot afford your trial period payments and want to keep your home, or if you have decided to give up your home, please contact us. We may have options available for you to avoid foreclosure.

Call (800) 746-2936 to learn more about these options. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET. You can also contact the financial counseling services listed below for information and assistance regarding government programs and housing counseling.

IBRP Letter

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS #: 1852*

# EXHIBIT 17



**Ocwen Loan Servicing, LLC**
HELPING HOMEOWNERS IS WHAT WE DO | ™
WWW.OCWEN.COM

10/9/2012

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:      5 Appleshire Ct, Freeland, MI 48623

Dear Borrower,

Thank you for submitting your application for foreclosure prevention assistance. Based on our review of the information you provided, the following documentation is required to complete the application process.

As of the date of this letter, if you have already submitted the documentation requested below you may disregard this notice.

STEP 1: Please provide a copy of the documents as described in the instructions below:
-We did not receive two most recent pay stubs that reflect at least 30 days of year to date earnings for each borrower.

STEP 2: The documentation listed above must be received by 10/24/2012. Failure to provide these documents within the timeline may delay your application process. Please send copies. Do not send originals.
Send a copy of this letter and the documents to the following:

To expedite processing:
FAX TO: (407) 737-6174   ***** OR *****   SCAN AND E-MAIL TO: mod@ocwen.com
You may also mail your application to:

Ocwen Loan Servicing, LLC
Attn: Home Retention Department
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

If you have any questions, please contact Ocwen at (800) 746-2936. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET. PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

IBRP Letter

NMLS #: 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

## FREQUENTLY ASKED QUESTIONS

**What happens after I submit my financial package?**

**Step 1** – After we receive your financial package, we will review it for completeness, making sure that all of the required information has been submitted and that the applicable forms are signed and dated appropriately. During this time, you will also be assigned a Relationship Manager, who will monitor your account during the review process and meet with you as needed to review options or address issues with your application. You will receive a letter with his or her name and more information about their role when a Relationship Manager is assigned to your account.

If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect, and we will follow up with a phone call to schedule an appointment with your Relationship Manager to review the missing documents with you. Otherwise, it will automatically move on to our Underwriting department for processing.

**Step 2** – Once the package or your request has been certified as complete, your application moves to the Underwriting stage where your eligibility is determined. We will review your account based on the resolution options allowed by the owner of your loan. If you indicate your desire is to remain in your home, we will start the review with our various loan modification options, and determine your eligibility for those programs first. If you do not want to keep the property, or if your account doesn't qualify for a modification, we will review your eligibility for other resolution options that we can offer. The review process typically takes 30 days once all of the documents are submitted and determined to be complete.

**Step 3** – If you qualify for one of our modifications, we will send you either a Trial Period Plan offer or a modification offer depending on the program. If we are able to offer you a different type of resolution, we will send you information about the program and an agreement to execute. We will also contact you by phone to set up an appointment with your Relationship Manager to review these documents and answer any questions that you may have about the resolution. If you do not qualify for any resolution options that we offer, we will send you a letter with information on additional alternatives.

**How can I get an update on the application process?**

If you submit a complete Borrower Response Package, you may not receive any notification until your eligibility is determined. The most important thing you can do is to ensure your Borrower Response Package is complete when submitting your request. Our Customer Care Representatives are available to answer your account questions; however, they will not have any information about the status of the application while it is being reviewed.

**What happens if I am eligible for a modification?**

If you are eligible for a modification, you will receive a Trial Period Plan offer which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the trial period). To accept the Trial Period Plan offer, you must make your first trial payment by the specified due date. Once you accept, we will suspend or stop the foreclosure process as long as you continue to make your required trial plan payments.

**What if I'm not eligible for a modification?**

If you do not qualify for a modification, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with any pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.

If you are not eligible or become disqualified while in a Trial Period Plan, we still may be able to work with you to avoid foreclosure. The sooner that you contact us, the more options we may be able to provide you. We urge you to contact us right away.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Letter

NMLS #: 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

**What should I do if I get a foreclosure notice?**

First, do not ignore them! The review of your Borrower Response Package and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home.

To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your Borrower Response Package request, contact us at (800) 746-2936. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**What if I have questions or can't make payments?**

If you cannot afford your trial period payments and want to keep your home, or if you have decided to give up your home, please contact us. We may have options available for you to avoid foreclosure.

Call (800) 746-2936 to learn more about these options. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET. You can also contact the financial counseling services listed below for information and assistance regarding government programs and housing counseling.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Letter

*NMLS #: 1852*



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

## ALTERNATIVES TO FORECLOSURE

Ocwen offers a number of programs to assist you in avoiding foreclosure. Your Relationship Manager will be able to discuss these options with you in more detail. Here are some of the options:

1. **MODIFICATION** – A change to one or more terms of the original mortgage agreement. This may include a change in interest rate, loan balance or term, which may lower your payment and bring the account current.

2. **HOME AFFORDABLE FORECLOSURE ALTERNATIVES PROGRAM (HAFA)** If your mortgage payment is unaffordable and you are interested in transitioning to more affordable housing, you may be eligible for a short sale or deed-in-lieu of foreclosure through the federal government's HAFA program.

3. **LISTING YOUR PROPERTY FOR SALE** – By listing your property, you may receive a sale offer acceptable to both you and to Ocwen. The sale of your property could help you to avoid a foreclosure sale of your home.

4. **DEED IN LIEU OF FORECLOSURE** – If you do not wish to keep the property, then depending on your current financial situation, Ocwen may accept the deed to the property and extinguish the debt, even if the property is worth less than the loan balance. The property title must be clear of any other liens.

## FOR ADDITIONAL ASSISTANCE:

### *Financial Counseling Services*

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

| | | |
|---|---|---|
| HUD Approved Housing Counseling: | 1-800-569-4287 | www.HUD.gov |
| HOPE Hotline Number: | 1-888-995-4673 | |
| Making Home Affordable Program: | | www.makinghomeaffordable.gov |
| Fannie Mae Assistance Programs: | | www.knowyouroptions.com |

### *For Borrowers in New York:*

The New York State Banking Department website provides detailed information about programs and services that are available to you for information and assistance in avoiding foreclosure. Please visit http://www.banking.state.ny.us for more information.

### *For Borrowers in North Carolina:*

The North Carolina Commissioner of Banks website provides resources related to avoiding foreclosure on the "Need Foreclosure Help?" page. Please visit http://www.nccob.gov/public for more information.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

IBRP Template

NMLS# 1852

# EXHIBIT 18



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
**WWW.OCWEN.COM**

10/11/2012

Nitin M. Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:       5 Appleshire Ct, Freeland, MI 48623

Dear Borrower,

Thank you for submitting your application for foreclosure prevention assistance. Based on our review of the information you provided, the following documentation is required to complete the application process.

As of the date of this letter, if you have already submitted the documentation requested below you may disregard this notice.

**STEP 1:** Please provide a copy of the documents as described in the instructions below:

   We did not receive two most recent pay stubs that reflect at least 30 days of year to date earnings for each borrower.

**STEP 2:** The documentation listed above must be received by 10/26/2012. Failure to provide these documents within the timeline may delay your application process. Please send copies. Do not send originals.

Send a copy of this letter and the documents to the following:

To expedite processing:

FAX TO: (407) 737-6174   ***** OR *****   SCAN AND E-MAIL TO: mod@ocwen.com

You may also mail your application to:

Ocwen Loan Servicing, LLC
Attn: Home Retention Department
1661 Worthington Road, Suite 100,
West Palm Beach, Florida 33409

If you have any questions, please contact Ocwen at (800) 746-2936. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET.

PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

IBRP Letter

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

NMLS #: 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

## FREQUENTLY ASKED QUESTIONS

**What happens after I submit my financial package?**

Step 1 – After we receive your financial package, we will review it for completeness, making sure that all of the required information has been submitted and that the applicable forms are signed and dated appropriately. During this time, you will also be assigned a Relationship Manager, who will monitor your account during the review process and meet with you as needed to review options or address issues with your application. You will receive a letter with his or her name and more information about their role when a Relationship Manager is assigned to your account.

If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect, and we will follow up with a phone call to schedule an appointment with your Relationship Manager to review the missing documents with you. Otherwise, it will automatically move on to our Underwriting department for processing.

Step 2 – Once the package or your request has been certified as complete, your application moves to the Underwriting stage where your eligibility is determined. We will review your account based on the resolution options allowed by the owner of your loan. If you indicate your desire to remain in your home, we will start the review with our various loan modification options, and determine your eligibility for those programs first. If you do not want to keep the property, or if your account doesn't qualify for a modification, we will review your eligibility for other resolution options that we can offer. The review process typically takes 30 days once all of the documents are submitted and determined to be complete.

Step 3 – If you qualify for one of our modifications, we will send you either a Trial Period Plan offer or a modification offer depending on the program. If we are able to offer you a different type of resolution, we will send you information about the program and an agreement to execute. We will also contact you by phone to set up an appointment with your Relationship Manager to review these documents and answer any questions that you may have about the resolution. If you do not qualify for any resolution options that we offer, we will send you a letter with information on additional alternatives.

**How can I get an update on the application process?**

If you submit a complete Borrower Response Package, you may not receive any notification until your eligibility is determined. The most important thing you can do is to ensure your Borrower Response Package is complete when submitting your request. Our Customer Care Representatives are available to answer your account questions; however, they will not have any information about the status of the application while it is being reviewed.

**What happens if I am eligible for a modification?**

If you are eligible for a modification, you will receive a Trial Period Plan offer which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the trial period). To accept the Trial Period Plan offer, you must make your first trial payment by the specified due date. Once you accept, we will suspend or stop the foreclosure process as long as you continue to make your required trial plan payments.

**What if I'm not eligible for a modification?**

If you do not qualify for a modification, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with any pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.

If you are not eligible or become disqualified while in a Trial Period Plan, we still may be able to work with you to avoid foreclosure. The sooner that you contact us, the more options we may be able to provide you. We urge you to contact us right away.

IBRP Letter

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS #: 1852



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

**What should I do if I get a foreclosure notice?**

First, do not ignore them. The review of your Borrower Response Package and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home.

To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your Borrower Response Package request, contact us at (800) 746-2936. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**What if I have questions or can't make payments?**

If you cannot afford your trial period payments and want to keep your home, or if you have decided to give up your home, please contact us. We may have options available for you to avoid foreclosure.

Call (800) 746-2936 to learn more about these options. We are available Monday to Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 9:00 am to 9:00 pm ET. You can also contact the financial counseling services listed below for information and assistance regarding government programs and housing counseling.

IBRP Letter

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS #: 1852



Ocwen Loan Servicing, LLC
HELPING HOMEOWNERS IS WHAT WE DO! ™
WWW.OCWEN.COM

## ALTERNATIVES TO FORECLOSURE

Ocwen offers a number of programs to assist you in avoiding foreclosure. Your Relationship Manager will be able to discuss these options with you in more detail. Here are some of the options:

1. **MODIFICATION** – A change to one or more terms of the original mortgage agreement. This may include a change in interest rate, loan balance or term, which may lower your payment and bring the account current.

2. **HOME AFFORDABLE FORECLOSURE ALTERNATIVES PROGRAM (HAFA)** If your mortgage payment is unaffordable and you are interested in transitioning to more affordable housing, you may be eligible for a short sale or deed-in-lieu of foreclosure through the federal government's HAFA program.

3. **LISTING YOUR PROPERTY FOR SALE** – By listing your property, you may receive a sale offer acceptable to both you and to Ocwen. The sale of your property could help you to avoid a foreclosure sale of your home.

4. **DEED IN LIEU OF FORECLOSURE** – If you do not wish to keep the property, then depending on your current financial situation, Ocwen may accept the deed to the property and extinguish the debt, even if the property is worth less than the loan balance. The property title must be clear of any other liens.

## FOR ADDITIONAL ASSISTANCE:

### *Financial Counseling Services*

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

HUD Approved Housing Counseling:  1-800-569-4287  www.HUD.gov
HOPE Hotline Number:  1-888-995-4673
Making Home Affordable Program:  www.makinghomeaffordable.gov
Fannie Mae Assistance Programs:  www.knowyouroptions.com

### *For Borrowers in New York:*

The New York State Banking Department website provides detailed information about programs and services that are available to you for information and assistance in avoiding foreclosure.  Please visit http://www.banking.state.ny.us for more information.

### *For Borrowers in North Carolina:*

The North Carolina Commissioner of Banks website provides resources related to avoiding foreclosure on the "Need Foreclosure Help?" page.  Please visit http://www.nccob.gov/public for more information.

IBRP Template

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS# 1852

# EXHIBIT 19

Ocwen Loan Servicing, LLC
HELPING HOMEOWNERS IS WHAT WE DO
WWW.OCWEN.COM

OCWEN

10/11/2012

Nitin M Amersey
5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:        5 Appleshire Ct, Freeland, MI 48623

Dear Borrowers: Nitin M Amersey

We Are Here to Help You! It is critical that you work with us on a resolution for any issues that affect your ability to make timely mortgage payments, whether your challenges are temporary or long term.
The sooner you respond, the more quickly we can determine whether you qualify for assistance.

**Options May Be Available**
The right option for you depends on your individual circumstances. If you provide all required information and documentation about your situation, we can determine if you qualify for temporary or long-term relief, including solutions that may allow you to stay in your home (refinance, repayment, forbearance, loan modification) or leave your home while avoiding foreclosure (short sale or deed-in-lieu of foreclosure).
For more details, please see the attachment on Avoiding Foreclosure.

**Send Us the Information We Need to Help You**
Requesting help is the first step. Start by providing information and documentation to help us understand the challenges you are facing. To do this, follow the detailed instructions on the attached Homeowner Checklist to complete and submit your Borrower Response Package to us.

Once we have received and evaluated your information, we will contact you regarding your options and next steps.

**Learn More and Act Now**
For more information, please see the Frequently Asked Questions and other information provided with this letter. If you need assistance, contact our customer support team at (800) 746-2936.

**Remember, you need to take action by completing and returning the entire Borrower Response Package by 11/10/2012.**

**TO RECEIVE HELP WITH YOUR MORTGAGE, YOU MUST ACT BY: 11/10/2012!**

1. See the instructions on the Homeowner Checklist

2. Review:
   - Avoiding Foreclosure
   - Frequently Asked Questions
   - Beware of Foreclosure Rescue Scams

3. Submit required Borrower Response Package:
   - Uniform Borrower Assistance Form (Borrower Assistance Form) (attached)
   - IRS Form 4506T-EZ (attached)
   - Income Documentation (described on Borrower Assistance Form)
   - Hardship Documentation (described on Borrower Assistance Form)

If you need assistance, contact us immediately at:

**(800) 746-2936**

PRANAV PATEKAR has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Customer Support
Ocwen Loan Servicing, LLC

- 1 -

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

NMLS #: 1852

## Homeowner Checklist

### For Your Information Only – Do Not Return with Your Borrower Response Package

GET STARTED -- use this checklist to ensure you have completed all required forms and have the right information.

| | |
|---|---|
| Step 1 | ☐ **Review the information provided to help you understand your options, responsibilities, and next steps:** |
| | ☐ Avoiding Foreclosure  ☐ Frequently Asked Questions  ☐ Beware of Foreclosure Rescue Scams |
| Step 2 | ☐ **Complete and sign the enclosed Borrower Assistance Form. Must be signed by all borrowers on the mortgage** (notarization is not required) and must include: |
| | ☐ All income, expenses, and assets for each borrower |
| | ☐ An explanation of financial hardship that makes it difficult to pay the mortgage |
| | ☐ Your acknowledgment and agreement that all information that you provide is true and accurate |
| Step 3 | ☐ **Complete and sign a dated copy of the enclosed IRS Form 4506T-EZ** |
| | ☐ For each borrower, please submit a signed, dated copy of IRS Form 4506T-EZ (Short Form Request for Individual Tax Return Transcript) |
| | ☐ Borrowers who filed their tax returns jointly may send in one IRS Form 4506T-EZ signed and dated by both joint filers |
| Step 4 | ☐ **Provide required Hardship Documentation. This documentation will be used to verify your hardship.** |
| | ☐ Follow the instructions set forth on the Borrower Assistance Form (attached) |
| Step 5 | ☐ **Provide required Income Documentation. This documentation will be used to verify your hardship and all of your income (Notice: Alimony, child support or separate maintenance income need not be revealed if you do not choose to have it considered for repaying this loan).** |
| | ☐ Follow the instructions set forth on the Borrower Assistance Form (attached) |
| | ☐ You may also disclose any income from a household member who is not on the promissory note (non-borrower), such as a relative, spouse, domestic partner, or fiancé who occupies the property as a primary residence. If you elect to disclose and rely upon this income to qualify, the required income documentation is the same as the income documentation required for a borrower. See Page 2 of the Borrower Assistance Form for specific details on income documentation. |
| Step 6 | ☐ **Gather and send completed documents—your Borrower Response Package—no later than 11/10/2012.** You must send in all required documentation listed in steps 2-4 above, and summarized below: |
| | • Borrower Assistance Form (attached) |
| | • Form 4506T-EZ (attached) |
| | • Income Documentation as outlined on Page 2 of the Borrower Assistance Form (attached) |
| | • Hardship Documentation as outlined on Page 3 of the Borrower Assistance Form (attached) |
| | **Please mail all documents above to us to: Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409**<br>**Fax: (407) 737-6174**<br>**Email: mod@ocwen.com** |

**IMPORTANT REMINDERS:**

- ☐ If you cannot provide the documentation within the time frame provided, have other types of income not specified on Page 2 of the Borrower Assistance Form, cannot locate some or all of the required documents, OR have any questions, please contact us at (800) 746-2936
- ☐ Keep a copy of all documents and proof of mailing/e-mailing for your records. Don't send original income or hardship documents. Copies are acceptable.

**Questions? Contact us at (800) 746-2936**

- 3 -

# Frequently Asked Questions
## For Your Information Only - Do Not Return with Your Borrower Response Package

**1. Why Did I Receive This Package?**
You received this package because we have not received one or more of your monthly mortgage payments and want to help you keep your home if at all possible. We are sending this information to you now so that we can work with you to quickly resolve any temporary or long-term financial challenge you face to making all of your late mortgage payments.

**2. Where Can I Find More Information on Foreclosure Prevention?**
Please see the Avoiding Foreclosure attachment in this package for more information, or you can contact Ocwen.com.

**3. Will I Be Evaluated for the Federal Home Affordable Modification Program (HAMP) When I Submit My Borrower Response Package?**
If you are not eligible for a refinance, reinstatement, repayment, or forbearance plan based on the information you provide, we will evaluate you for participation in the Home Affordable Modification Program (HAMP). If you are not eligible for HAMP, we will evaluate you for a non-HAMP Freddie Mac loan modification.

**4. Will It Cost Money to Get Help?**
There should never be a fee from your servicer or qualified counselor to obtain assistance or information about foreclosure prevention options. However, foreclosure prevention has become a target for scam artists. Be wary of companies or individuals offering to help you for a fee, and never send a mortgage payment to any company other than the one listed on your monthly mortgage statement or one designated to receive your payments under a state assistance program.

**5. What Happens Once I Have Sent the Borrower Response Package to You?**
We will contact you within three business days of our receipt of your Borrower Response Package to confirm that we have received your package and will review it to determine whether it is complete. Within five business days of receipt of your request, we will send you a notice of incompleteness in the event there is any missing information or documentation that you must still submit. We cannot guarantee that you will receive any (or a particular type of) assistance.

Within 30 days of receipt of a complete Borrower Response Package, we will let you know which foreclosure alternatives, if any, are available to you and will inform you of your next steps to accept our offer. However, if you submit your complete Borrower Response Package less than 37 days prior to a scheduled foreclosure sale date, we will strive to process your request as quickly as possible, but you may not receive a notice of incompleteness or a decision on your request prior to sale. **Please submit your Borrower Response Package as soon as possible.**

**6. What Happens to My Mortgage While You Are Evaluating My Borrower Response Package?**
You remain obligated to make all mortgage payments as they come due, even while we are evaluating the types of assistance that may be available.

**7. Will the Foreclosure Process Begin If I Do Not Respond to this Letter?**
If you have missed four monthly payments or there is reason to believe the property is vacant or abandoned, we may refer your mortgage to foreclosure regardless of whether you are being considered for a modification or other types of foreclosure alternatives.

**8. What Happens if I Have Waited Too Long and My Property Has Been Referred to an Attorney for Foreclosure? Should I Still Contact You?**
Yes, the sooner the better!

**9. What if My Property is Scheduled for a Foreclosure Sale in the Future?**
If you submit a complete Borrower Response Package less than 37 calendar days before a scheduled foreclosure sale, there is no guarantee we can evaluate you for a foreclosure alternative in time to stop the foreclosure sale. Even if we are able to approve you for a foreclosure alternative prior to a sale, a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the sale may not halt the scheduled sale.

**10. Will My Property be Sold at a Foreclosure Sale If I Accept a Foreclosure Alternative?**
No. The property will not be sold at a foreclosure sale once you accept a foreclosure alternative, such as a forbearance or repayment plan, and comply with all requirements.

# EXHIBIT 20



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

October 25, 2012

Nitin M Amersey

5 Appleshire Ct
Freeland, MI 48623

Loan Number:
Property Address:    5 Appleshire Ct
Freeland, MI 48623

## Important Information Regarding
## Your Modification Application

Dear Ocwen Customer,

Ocwen would like to take this opportunity to thank you for submitting an application for assistance. We value your business and want to assure you that we are processing your request as quickly as possible. To better serve you during this time, we have provided answers to the most frequently asked questions from customers who have similarly applied for assistance.

### FREQUENTLY ASKED QUESTIONS

**What happens after I submit my financial package?**

**Step 1** – The first step in the approval process is to have your financial package reviewed for completeness. We must make sure that all of the required information has been submitted and the applicable forms are signed and dated appropriately. After you submit the financial package, there is no need to call us to check on it. If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect. If your package is complete, it will automatically move to underwriting.

**Step 2** – Once the package has been certified as complete, your application moves to the underwriting stage where your eligibility is determined. If you have applied for assistance on your primary residence and your loan is a first lien, Ocwen will first look to qualify you for the federal government's Home Affordable Modification Program (HAMP). If we determine that you do not qualify for the HAMP modification, we will attempt to qualify you for an Ocwen sponsored modification program automatically. If you are applying for assistance on an investment property or second lien mortgage, you may still qualify for an Ocwen sponsored modification. If you do not qualify for either an HAMP or Ocwen modification, we will send you a letter with information on alternatives.

**Step 3** – If you qualify, we will send you either a Trial Period Plan offer or a modification offer depending on the program. It takes approximately 30 days for us to complete our review.

**How can I get an update on the application process?**

If you submit a complete financial package, you may not receive any notification until your eligibility is determined. It is not necessary to call us to obtain an update as your request will be processed in the order in which it is received. The most important thing you can do is to ensure your financial package is complete when submitting your request.

**Will a foreclosure occur if I participate in the Home Affordable Modification program?**

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

*NMLS # 1852*



**Ocwen Loan Servicing, LLC**
**HELPING HOMEOWNERS IS WHAT WE DO!™**
**WWW.OCWEN.COM**

While we consider your request, we will not initiate a new foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure as long as we have received all required documents and you have met the eligibility requirements.

**Will it help to speak to an Ocwen Representative?**

We know your time is valuable, so we do not want you to feel the need to follow-up via phone. If you call us while the package is being processed, the representative will not have any new information. Please rest assured our representatives are working diligently to process your application.

We are committed to helping you retain your home. That's why we are currently evaluating your mortgage for eligibility in the Home Affordable Modification Program ("HAMP") which would modify the terms of your loan and make your mortgage payments more affordable. If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP. However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation.

**HAMP Eligibility**

• If you are eligible for HAMP, you will enter into a "trial period". You will receive a Trial Period Plan Notice which will contain a new trial payment amount (this will temporarily replace your current mortgage payment during the HAMP trial period). To accept the Trial Period Plan, you must make your first trial payment by the specified due date. Once you accept, we will halt the foreclosure process as long as you continue to make your required trial plan payments.

• If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. During this 30-day review period, we may continue with the pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.

**Important—Do not ignore any foreclosure notices.**

The HAMP evaluation and the process of foreclosure may proceed at the same time. You may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken to proceed with a foreclosure sale of your home. While you will not lose your home during the HAMP evaluation, to protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you have any questions about the foreclosure process and the evaluation of your HAMP request, contact us at (800) 746-2936. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**Questions**

Call (800) 746-2936 if you cannot afford to make your trial period payments, but want to remain in your home. Or if you have decided to leave your home, contact us—we have other options that may be able to help you avoid foreclosure. We are available Monday – Friday 8:00 am to 9:00 pm ET, Saturday 8:00 am to 5:00 pm ET and Sunday 12:00 pm to 9:00 pm ET.

Sincerely,

Ocwen Loan Servicing, LLC
**HELPING HOMEOWNERS IS WHAT WE DO!**

**FINANCIAL COUNSELING SERVICES**

When you are experiencing a financial hardship, counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge. For specific guidance on this notice or information related to the Home Affordable Modification Program, ask the counselor for MHA HELP.

HUD-Approved Housing Counseling:     1-800-569-4287 www.HUD.gov

HOPE Hotline Number:     1-888-995-4673

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

NMLS #1852

# EXHIBIT 21



2012033244

L-2695 P-1060 Page 1 of 9
OFFICIAL SEAL Saginaw County, Michigan
Mildred N. Bodak Register of Deeds
October 26, 2012 11:38 AM



STATE OF MICHIGAN
Saginaw County
October 26, 2012
Receipt # 199993

REAL ESTATE TRANSFER TAX
$405.70 + COUNTY
$0.00 + STATE
Stamp # 39654

318199F02 Amersey - FC J

## SHERIFF'S DEED ON MORTGAGE SALE

This indenture made this 19th day of October, A.D. 2012, between **BRENDA KAPPEN**, a Deputy Sheriff in and for Saginaw County, Michigan, whose address is 208 S Harrison St Saginaw, Michigan 48602-2150, party of the first part, and Federal Home Loan Mortgage Corporation, whose address is c/o Trott & Trott 31440 Northwestern Highway, Suite 200, Farmington Hills, Michigan 48334-2525, party of the second part (hereinafter called the grantee),

WITNESSETH, That Whereas a certain mortgage made by Nitin M. Amersey, A Single Man, original mortgagor(s), to Bank of America, N.A., Mortgagee, dated June 20, 2008, and recorded on July 7, 2008, in Liber 2499 on Page 1594, and assigned by said Mortgagee to Ocwen Loan Servicing, LLC as assignee as documented by an assignment dated September 4, 2012 recorded on September 11, 2012 in Liber 2637 on Page 2038, in Saginaw county records, Michigan and

WHEREAS, said mortgage contained a power of sale which has become operative by reason of a default in the condition of said mortgage, and

WHEREAS, no suit or proceedings at law or in equity have been instituted to recover the debt secured by said mortgage or any part thereof, and

WHEREAS, by virtue of said power of sale, and pursuant to the statute of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage, that the said premises, or some part of them, would be sold at 10:00 AM on the 12th day of October, A.D. 2012 (sale adjourned from October 12, 2012 to October 19, 2012), at public vendue, that being the place of holding the Circuit Court for Saginaw County where the premises are situated and

WHEREAS, pursuant to said notice I did, at on the day last aforesaid, expose for sale at public vendue the said lands and tenements hereinafter described, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of Three Hundred Ninety-Six Thousand Five Hundred Seventy-Six and 57/100 Dollars ($396,576.57), that being the highest bid therefore and the grantee being the highest bidder, and

WHEREAS, said lands and tenements are situated in the Township of Thomas, Saginaw County, Michigan, more particularly described in exhibit A, attached and commonly known as:

5 Applecider Ct

Property Tax Parcel ID 28-12-3-01-2364-000

This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices, which may generate noise, dust, odors, and other associated conditions, may be used and are protected by the Michigan right to farm act.

Now, this Indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain and sell unto the grantee, its successors and assigns, forever, all the estate, right, title and interest, which the said Mortgagor(s) had in said land and tenements and every part thereof, on the 20th day of June A.D. 2008, that being the date of said mortgage, or at any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoof forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the date and year first above written.

_Brenda Kappen_     **BRENDA KAPPEN**

Deputy Sheriff in and for the County of Saginaw

STATE OF MICHIGAN
COUNTY OF SAGINAW

On this 19th day of October, A.D. 2012, before me, a Notary Public in and for said County of Saginaw came **BRENDA KAPPEN**, a Deputy Sheriff of said County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that she/he executed the same to be her/his free act and deed as such Deputy Sheriff.

Notary Public, Saginaw County, Michigan
My commission expires: 7-19-14
Acting in the county of Saginaw

THIS INSTRUMENT IS EXEMPT FROM COUNTY TRANSFER TAX PURSUANT TO 12U.SC. 1452(e) and MCL 207.505(e);

THIS INSTRUMENT IS EXEMPT FROM STATE TRANSFER TAX PURSUANT TO 12U.SC. 1452(e); MCL 207.505(e); and MCL 207 526(v).

Mary Snow
Notary Public - State of Michigan
County of Saginaw
My Commission Expires July 19, 2014

Freddie Mac (DC) #5213 12809

Liber: 2695 Page: 1061  Page 2 of 9

318199F02 Amersey - PC J

**Exhibit A - Property Description**

Freddie Mac (DC) #321312809

Unit 64, The Grove at Apple Mountain, according to the Master Deed recorded in Liber 1980 on Pages 208 through 296, Saginaw County Records, and designated Saginaw County Condominium Plan No. 51 together with the Rights in General and Limited Elements, as set forth in the above Master Deed and as described in Act 59 of the Public Acts of 1978 as amended.

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| STATE OF MICHIGAN<br>70th JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT<br>3rd-Party | CASE NO.<br>13-1199-LT(5) |
|---|---|---|

**Court address** 3rd-Party

111 S. Michigan Avenue, Saginaw, MI 48602-2019      **Court telephone no.** (989) 790-5562

| Plaintiff's name(s), address(es), and telephone no(s). 3rd-Party<br><br>Nitin M. Amersey<br>5 Appleshire<br>Freeland, Michigan 48623<br>(989) 414-1407 | v | Defendant's name(s), address(es), and telephone no(s).<br><br>Ocwen Loan Servicing, LLC, c/o Resident Agent,<br>CSC- Lawyers Incorporating Company<br>601 Abbot Road<br>East Lansing, Michigan 48823 (877) 858-3855 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br><br>Jerome D. Goldberg, PLLC / Jerome D. Goldberg (P61678)<br>2921 E. Jefferson Ave, Ste 205, Detroit, MI 48207<br>(313) 393-6001<br>Kathy H. Murphy (P51422)<br>P.O. Box 51164, Livonia, MI 48150 (734) 578-1887 | | |

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 6·6·13 | This summons expires 6·27·13 | Court clerk CHERYL B. JARZABKOWSKI COURT ADMINISTRATOR |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Freeland, Saginaw, Michigan | Defendant(s) residence (include city, township, or village)<br>State of Delaware |
|---|---|
| Place where action arose or business conducted<br>County of Saginaw, Michigan | |

| 06/06/2013<br>Date | Signature of attorney/plaintiff<br>Kathy H Murphy P51422 |
|---|---|

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) SUMMONS AND COMPLAINT   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| STATE OF MICHIGAN JUDICIAL DISTRICT 70th DC Saginaw | SUMMONS Landlord-Tenant / Land Contract | CASE NO. 13-1199-LT |
|---|---|---|

Court address
111 S Michigan Ave, Saginaw, MI 48602-2019

Court telephone no.
989.790.5382

| Plaintiff's name, address, and telephone no. Federal Home Loan Mortgage Corporation | Plaintiff's attorney, bar no., address and telephone no. Donald J King P55358 Trott & Trott, P.C. 31440 Northwestern Hwy Ste 200 Farmington Hills, MI 48334-5422 248.723.6452 |
|---|---|

v

Defendant's name, address, and telephone no.
Nitin M Amersey and all other occupants
5 Appleshire Ct
Freeland, MI 48623-8916
T&T #318199E03

Property situated in Township of Thomas

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings please contact the court immediately to make arrangements

☐ Rental unit eviction

☐ Land contract forfeiture

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. The plaintiff has filed a complaint against you and wants
   ☐ to recover possession, after land contract forfeiture, of
   ☐ a money judgment for
   ☒ to evict you from

   Address or description of premises
   5 Appleshire Ct
   Freeland, MI 48623-8916

2. You are summoned to be in the district court on *Monday, June 10, 2013* at *10:00*
   Day and date     Time

   ☒ at the address above, *3rd floor*                    courtroom *3B*
   Location

3. You have the right to a jury trial. If you do not demand a jury trial and pay the required jury fee in your first defense response, you will lose this right.

4. If you are in district court on time, you will have an opportunity to give the reasons why you feel you should not be evicted. Bring witnesses, receipts, and other necessary papers with you.

5. If you are not in district court on time, you may be evicted without a trial and a judgment may be entered against you.

Cheryl B Jergabkowski
Court Administrator

Date issued: 5/31/13

Court clerk

This document must be sealed by the seal of the court.

*The certificate of mailing applies to landlord-tenant cases only.

### CERTIFICATE OF MAILING BY COURT*

I certify that on this date I served a copy of this summons and the complaint and required attachments on the defendants by first-class mail addressed to their last-known addresses as defined in MCR 2.107(C)(3).

Date: 5/31/13

Court clerk/officer

### CERTIFICATE OF MAILING BY PLAINTIFF*

I certify that on this date I served a copy of this summons and the complaint and required attachments on the defendants by first-class mail addressed to their last-known addresses as defined in MCR 2.107(C)(3). I have attached a receipt of mailing from the post office.

Date

Plaintiff signature
Landlord,
Landlady

DC 104 (3/08)   SUMMONS, LANDLORD-TENANT / LAND CONTRACT

MCL 600.5735,
MCR 2.102, MCR 4.201(C), MCR 4.202(E)

STATE OF MICHIGAN | COMPLAINT TO | CASE NO.
JUDICIAL DISTRICT | RECOVER POSSESSION OF | 13-1199 LT (S)
70th DC Saginaw | PROPERTY |

13-1199

Court telephone no.
989/790.5382

**Court address**
111 S Michigan Ave, Saginaw, MI 48602-2019

| Plaintiff name(s), address(es), and telephone no.(s) | | Defendant name(s) and address(es) |
| --- | --- | --- |
| Federal Home Loan Mortgage Corporation | **v** | Nitin M Amersey and all other occupants<br>5 Appleshire Ct<br>Freeland, MI 48623-8916<br>T&T #318199E03 |

| Plaintiff's attorney, bar no., address, and telephone no. | Property situated in Township of Thomas |
| --- | --- |
| Trott & Trott, P.C.<br>Donald J. King P55358, Primary Attorney<br>Thomas A. Balinski P41771<br>31440 Northwestern Hwy Ste 200<br>Farmington Hills, MI 48334-5422<br>248.723.6452 | Steven B. Ruza (P41476 )<br>Attorney for Defendant<br>Home Legal Group PLLC<br>3050 Union Lake Rd Ste 8F<br>Commerce Township, MI 48382<br>(248) 462-3021 |

**The plaintiff states:**

1. ☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence alleged in this complaint

   ☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in this complaint has been previously filed in _____ Court. The docket number and assigned judge are .
   The action   ☐ remains   ☐ is no longer pending.

2. Attached to this complaint is a copy of the lease or occupancy agreement, if any, under which possession is claimed, and a copy of the notice to quit or demand for possession showing when and how it was served.

3. The person entitled to possession of the property described

   ☐ in the attached notice/demand   ☒ as follows: see the attached Sheriff's Deed, recorded on October 26, 2012 in Liber 2695 on Page 1060 in Saginaw County Records is the Plaintiff as referenced above.

4. The defendant is in possession of the following portion of the property:   all of the above captioned property

5. The plaintiff has a right to possession of the property because:

   ☐ a. lease expired on _____ .     ☐ b. tenancy terminated by notice to quit
   ☐ c. lease terminated per provision in lease (para no. _____).   ☐ d. defendant is a trespasser. Explain in space beneath item f
   ☐ e. forcible entry made or possession held by force after peaceful entry.
   ☒ f. other:
   Describe in detail how the trespass occurred or how the premises are being illegally held. State that no lawful tenancy existed between the parties in the time that has passed since the trespasser took possession. Defendants are holding over after the expiration of the redemption period following a mortgage foreclosure sale. A 90 Day Notice to Vacate letter was mailed to the defendants in accordance with P.L. 111-22(702) (See attached). No lawful tenancy existed between the parties in the time that has passed since the trespasser took possession.

6. (If applicable)  The tenancy involves regulated housing operated by or under rules of a governmental unit. The rule or law under which the tenancy is ended is _____

7. The Plaintiff declares that this residential property was kept fit for the use intended and has been kept in reasonable repair during the term of the lease.

8. The defendant remains in possession of the property.

9. Plaintiff asks for a judgment of possession and costs.

10. The plaintiff demands a jury trial.

**SUPPLEMENTAL COMPLAINT**

11. Complaint is made and judgment is sought for money damages against the defendant as follows:

Date  5-20-13

Plaintiff/Attorney signature  Thomas A. Balinski P41771

DC 102c (1/12)  **COMPLAINT TO RECOVER POSSESSION OF PROPERTY**

MCR 2.113(C), MCR 4.201(B), MCL 6000.5714